THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THE HARTFORD LIFE INSURANCE COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1911.*

1. INSURANCE—*there is a distinction between contracts for life insurance and contracts for fire insurance.* One who takes a fire insurance policy makes the contract for his own benefit for a short period of time and does not need the aid of a statute designed to secure the solvency of the company at a distant period of time, but policies of life insurance companies run for comparatively long periods and are mainly for the protection of a class of dependents entitled to protection against involvency, which might follow reckless competition.

2. SAME—*regulation designed to guard persons taking life insurance against involvency of company is valid.* A regulation designed and adapted to secure equality among those contributing to the funds and resources of life insurance companies and to secure financial ability upon the part of the companies to meet obligations which may mature in the distant future does not violate any prohibition of the constitution.

3. CONSTITUTIONAL LAW—*right to contract is subject to regulation under the police power.* The right to contract is a property right, but, like all other rights, its exercise is subject to the police power, and may be limited and restricted for the preservation of the public health, morals, safety or welfare or to prevent a well known evil and wrong.

4. SAME—*act of 1891, prohibiting discrimination in life insurance rates, is not invalid as stifling competition.* The act of 1891, prohibiting discrimination between life insurants of the same class and of equal expectation of life, is not unconstitutional upon the ground that its real purpose is to stifle competition among life insurance companies, and that it imposes restrictions upon the business of selling contracts for life insurance that are not im-

posed upon the business of selling contracts for fire insurance or other things.

5. SAME—*provision for forfeiture of agent's license for violation of the act of 1891 is not invalid.* The provision of the act of 1891 for a forfeiture of a life insurance agent's license if he violates the provisions of said act against discrimination between insurants of the same grade is not invalid upon the ground that the penalty is not proportionate to the offense.

6. EVIDENCE—*when refusal to permit proof of rule against rebating is proper.* In an action to recover a penalty for violation of the act of 1891, prohibiting life insurance companies from discriminating between insurants of the same grade, it is not error to refuse to permit proof of a rule of the company against rebating which was not enforced but violated by the company's manager.

7. PLEADING—*when it is not necessary to allege that the discrimination was unjust.* In an action in the municipal court of Chicago to recover a penalty for the violation of the Insurance act of 1891, if the statement sets out with particularity all the facts showing a violation of the act, it is not essential that the statement allege that the discrimination was unjust.

8. PENALTIES—*when rule that informer cannot reap benefit of his wrongful act does not apply.* The rule that the law will not permit an informer to reap the benefit of his own wrongful act in inducing a violation of a statute does not apply where he does not advise or induce the commission of the crime, but merely creates the conditions under which an offense may be committed.

9. SAME—*what does not defeat action to recover a penalty.* It is not a violation of the law for a person to find out whether offenses are being committed although he does so by artifice or deceit, such as using decoy letters, writing letters under assumed names or furnishing money to secure evidence; and the fact that the informer did such things does not defeat the recovery of a penalty for violation of the Insurance act of 1891.

10. SAME—*it is proper for the jury to fix amount of penalty in civil action.* An action to recover a penalty for violation of the Insurance act of 1891 is a civil action, and it is proper in such case for the jury to fix the amount of the penalty. (*Armstrong v. People,* 37 Ill. 459, distinguished.)

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding.

HARVEY STRICKLER, for plaintiff in error.

JOHN E. W. WAYMAN, State's Attorney, and DAVID K. COCHRANE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The municipal court of Chicago entered a judgment on the verdict of a jury against the Hartford Life Insurance Company for a penalty of $750 in a suit of the fifth class brought by the People of the State of Illinois for a violation of the act prohibiting discrimination between life insurants of the same class and equal expectation of life, by issuing a policy to Alfred Bellstrom for less than the fixed annual premium. The defendant moved the court to strike the amended statement of claim from the files, and one of the reasons assigned was that the act violated constitutional restrictions upon the legislative power and was therefore void. The motion was overruled, and, the validity of the act being involved, the record has been brought to this court by writ of error.

We decided in *Metropolitan Life Ins. Co.* v. *People,* 209 Ill. 42, that the nature of the life insurance business and the interest of the public in it are such as to subject it to regulation, and that the act prohibiting discrimination in favor of individuals between insurants of the same class and with equal expectation of life is a valid exercise of the power of regulation. Subsequently, in *People* v. *Commercial Life Ins. Co.* 247 Ill. 92, it was contended that the act was void as a police regulation because it excluded fraternal associations furnishing life insurance, thereby discriminating arbitrarily between companies in the same class. That question was considered, and it was held that there is such a fundamental difference between life insurance companies and fraternal associations that they are not substantially in the same class or situation, and there was, therefore, no arbitrary discrimination against life insurance companies. It is not now contended that insurance

companies are not subject to police regulation nor that
there is no difference in character or situation between life
insurance companies and fraternal associations, but the ar-
gument is, that the real purpose of the act is to stifle com-
petition between life insurance companies and compel them
to have only one price for their policies and make every-
body pay that price, which cannot be deemed for the public
welfare; that there is no difference, in principle, between
selling contracts for life insurance and fire insurance and
the sale of other contractual obligations, such as bonds,
notes or mortgages, or the selling of any other property.
There are material differences between life insurance con-
tracts and those of fire insurance companies, as well as the
sale of bonds, notes, mortgages or other property. The
purchaser of property or securities takes title to the same
and pays the price agreed upon, and when one takes a fire
insurance policy he makes the contract for his own benefit
for a short period of time, and does not need the aid of a
statute designed to secure the solvency of the company at
a distant period of time. The policies of life insurance
companies run for comparatively long periods of time, and
are mainly for the benefit of a class of dependents entitled
to protection against the insolvency which might follow
reckless and ruinous competition. The right to contract
is a property right, but, like all other rights, its exercise
is subject to the police power, and may be limited and re-
stricted for the preservation of the public health, morals,
safety or welfare or to prevent a well known evil and
wrong. (*Ritchie* v. *Wayman,* 244 Ill. 509.) A regulation
designed to secure equality between those contributing to
the funds and resources of life insurance companies and to
secure financial ability to meet obligations which may ma-
ture in the distant future and adapted to that end does not
violate any prohibition of the constitution. Similar acts
are in force in a large number of the States, (Joyce on

2 5 2 — 2 6

Insurance, sec. 1091, note; Richards on Insurance Law, 703;) and have been regarded as valid.

The act provides for a forfeiture of the agent's license, and counsel insists that it is void because that penalty is not proportionate to the offense. Other acts provide for the revoking of licenses to practice professions requiring great skill and learning where the holder has violated the. law, and they are considered valid. The occupation of an insurance agent does not call for learning or a previous course of study but only for persuasive powers, and if he violates the law he may be lawfully deprived of the right to prosecute that business.

It is also argued that the statement of claim was insufficient because it did not allege that the discrimination was unjust, although it stated with particularity all of the facts showing a violation of the act. The first section of the act fixes the character of discrimination prohibited, and the second section declares that any company making any unjust discrimination, as enumerated in section 1, shall be deemed guilty of having violated the act. It was not necessary, after stating the facts in the claim, to denounce the discrimination as unjust.

August C. Wegner, who was the informer and entitled to one-half of the penalty, was an agent of the New York Life Insurance Company, and he gave to John F. Goggin $44 to pay as premiums on policies which he would get from other insurance companies, and he was to get rebates if he could. In pursuance of the plan Wegner wrote a letter June 29, 1910, to which he signed the name of Goggin, directed to Harry B. Johnston, manager of the defendant at Chicago, saying that he had received a proposition for insurance in that company and had a few other offers, but concluded to accept Johnston's offer. He requested Johnston to call July 7 at his residence. Goggin had received no proposition for insurance and the statement was false. Goggin saw the letter when Wegner was at his house and

he mailed it to Johnston.  Johnston employed sub-agents on commission and sent Louis P. Hazen to Goggin's home as requested, and Hazen took an application for a policy for $1000, which was afterward delivered.  The regular annual premium was $22.08 and Wegner gave Goggin $16.56, with which Goggin paid for the policy.  Wegner had told Goggin that he would furnish the money for the premium and all the discount or rebate Goggin could get would be his.  In pursuance of that arrangement Wegner paid Goggin the amount of the rebate, which was the difference between $16.56 and $22.08.  On July 18, 1910, Johnston wrote Goggin enclosing the policy, saying that the balance due was $16.56, which was to be sent to the office, and adding, "I hope you will be able to secure more business for us on the same basis."  Wegner wrote a letter in reply, saying that Johnston had offered to extend the terms granted to Goggin to others; that he had a friend, Alfred Bellstrom, whom he had told about his premium, and if Johnston could see Bellstrom on August 2, at eight P. M., he believed he could secure an application.  Goggin signed the letter and gave it back to Wegner.  Another letter was written to Johnston, saying that Ida Waters wanted to take out some insurance and Goggin would send her to the office with a letter, if he could persuade her to go.  Johnston wrote to Goggin, saying that he had recommended two prospects for insurance, and in case the policies were issued and paid for, twenty-five per cent of the premium would be paid Goggin.  Johnston sent Hazen to see Bellstrom and took his application for a policy for $1000, which was issued, and the annual premium was $29.25.  The defendant gave Bellstrom a receipt for that amount, but Bellstrom paid only $21.94 in a check of J. H. Fetterhoff, furnished him by Wegner.  This was the act of discrimination alleged in the statement of claim, which did not include the transaction with Goggin or Ida Waters.  On September 9 Goggin wrote to Johnston claiming a commis-

sion of twenty-five per cent on the Bellstrom and Waters policies which had been deducted by the defendant, and Johnston answered on September 12, saying that the other parties were informed by Goggin that the twenty-five per cent was to be credited to them, as had been done in Goggin's case, and he understood it was to be given to the other parties. On September 22 Goggin wrote to Johnston that he had inquired of his friends and found that they had got the commission instead of himself, and that they would call the matter square.

It is objected that the court admitted evidence of transactions not pertaining to the case and leading the jury to believe that the defendant had been guilty of other offenses. The letter to Goggin about securing other business was brought into the case on the cross-examination of Bellstrom and was admitted in evidence without objection. It was the theory of the defendant that there was an arrangement with Goggin for twenty-five per cent commissions, and this was presented as the sole defense. The letters about the Waters policy were offered in evidence by the defendant, so that there is no ground for the complaint.

The court did not err in refusing to permit proof of a rule prohibiting rebating. It is said that it would tend to mitigate the amount of the penalty, but it could not have that effect where the manager having charge of the agency knew that the rule was being violated. If the defendant was guilty and subject to a penalty, the existence of a rule which was not enforced but was violated by the defendant's manager would have no tendency to reduce the penalty.

It is next argued that the trial court failed properly to control the conduct of plaintiff's counsel in asking improper questions and in making improper statements at the trial. Bellstrom had testified and later in the trial was recalled and asked if he had seen the attorney for the defendant at the State's attorney's office, if he went there at the request of the attorney, and what occurred there. He per-

sisted in asking the questions, and in reply to objections of defendant's attorney and interrogations of the court simply said that the evidence would tend to show the facts of the case and that it would straighten out the testimony so that the jury would get it right, and that he wanted to show what those people falsely represented at Bellstrom's house. The conduct of the attorney was grossly improper and had no object except to create prejudice or raise an unfavorable inference against defendant's attorney. The court finally sustained the objection, and in view of all the evidence we are not inclined to reverse the judgment because of the conduct of the attorney.

The defendant offered to prove that the commission on Bellstrom's policy was sixty per cent of the face of the premium, in connection with the evidence that he paid twenty-five per cent less than the amount of the premium, but was not permitted to make the proof. The object was to prove that the agent had divided the commission with Goggin for services rendered in securing the insurants. It is not claimed that the agent had a right to dispose of his commission as he saw fit or to rebate a part of it to the insured where the insurance company received the entire amount to which it was entitled, but it is assumed here, as it was in *Metropolitan Life Ins. Co.* v. *People, supra,* that doing so would be a violation of the terms of the act. That question, therefore, is not considered, and we do not think the jury could have believed that the allowance to Bellstrom was made as a commission to Goggin. It is true that Goggin directed the attention of Johnston to Bellstrom, but the conduct of the parties indicates pretty clearly that the proposition for commissions was a mere device, since the deduction of twenty-five per cent was made to Bellstrom directly, without any inquiry to Goggin. Proof that the commission was sixty per cent of the premium would not have aided the defendant on that question.

The court refused to instruct the jury that the law does not permit an informer to reap a benefit from his own wrongful conduct in inducing a violation of a statute. One cannot arrange for a crime to be committed against himself or his property and aid, encourage or solicit the commission of the crime, (*Love* v. *People*, 160 Ill. 501,) but if he does not induce or advise the commission of the crime and merely creates the condition under which an offense against the public may be committed the rule does not apply. (*People* v. *Smith*, 251 Ill. 185.) It is not a violation of the law to find out whether offenses are being committed although it is done by artifice or deceit, such as the use of decoy letters, writing letters under assumed names or furnishing money to secure evidence. We see no substantial distinction between the act of an informer and that of one who secures evidence of criminal acts for a reward, and undoubtedly a prosecution could not be defeated because the evidence is so obtained.

Counsel contends that it was error for the jury to fix the amount of the penalty. There seems to be no uniformity of practice in the courts of different States with respect to the proper functions of the court and jury in such cases. In this State the action for a penalty is a civil action in debt, (*Metropolitan Life Ins. Co.* v. *People, supra,*) and we see no reason why it should not be governed by the same rule that obtains in other civil cases where the jury fixes the amount. That has heretofore been the unquestioned practice. The case of *Armstrong* v. *People,* 37 Ill. 459, does not apply, because that was a criminal prosecution for an offense punishable by imprisonment in the penitentiary and a fine, while this is a civil action to recover a penalty as a debt.

We cannot say that the judgment was wrong, and accordingly it is affirmed.    *Judgment affirmed.*