## BILLINGSLEY v. UNITED STATES (two cases).

## CLIFT v. SAME.

(Circuit Court of Appeals, Sixth Circuit. July 1, 1921.)

Nos. 3518-3520.

1. **Criminal law** ⬥=37—**Instruction held correctly to state law as to entrapment by officers.**

In a prosecution for transporting whisky from one state into another contrary to the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c), an instruction that if the authorities have reasonable grounds to suspect defendants were causing whisky to be unlawfully transmitted, and one of them joined with defendants for the purpose of detecting their crime, the officer's acts would not prevent conviction, but that if defendants had no intention of committing a crime, and were induced to do so by the officer, they could not be convicted, correctly states the law in relation to entrapment.

2. **Criminal law** ⬥=678(1)—**Prosecution not required to elect between counts charging different offenses committed on same day.**

Where the indictment contained numerous counts charging similar offenses, the prosecution need not elect between two of those offenses alleged to have been committed on the same date, where the allegations and the evidence supporting them clearly showed that they referred to different transactions.

3. **Indictment and information** ⬥=176—**Prosecution not limited to date alleged in indictment.**

The date in an indictment does not necessarily limit the prosecution to proof of the commission of the offense on that particular date, provided the date proven is prior to the date of filing the indictment, and is in such reasonable proximity to the actual date that defendants could not have been misled or prejudiced thereby.

4. **Criminal law** ⬥=1167(1)—**Departure from alleged date held not to have prejudiced defendants.**

In a prosecution for unlawfully transporting whisky from one state into another, where defendants did not deny any of the acts charged against them in the indictment and testified to by the witnesses for the prosecution, but defended only on the ground that they were entrapped by officers into committing the offense, they were not prejudiced by a departure of the proof from the date of one of the transactions alleged in the indictment.

5. **Indictment and information** ⬥=159(3)—**Amendment of indictment unnecessary for proof that offense was committed on different date.**

It is not necessary to amend an indictment to render admissible testimony by a witness that the offense was committed on a different date than that alleged in the indictment.

6. **Criminal law** ⬥=444—**Account books held admissible, without testimony verifying each entry.**

Account books kept by the seller of the whisky unlawfully transported, which were identified by a witness as those kept in the regular course of business by a person employed for that purpose, are admissible against defendants, though the witness did not make all or any of the entries therein, and though he did not have any recollection with reference to the particular transactions.

7. **Intoxicating liquors** ⬥=233(1)—**Account in fictitious name held admissible against accused.**

In a prosecution for unlawfully transporting whisky from one state into another, an account kept by the seller of the whisky in a fictitious name is admissible against defendants, after evidence was introduced identifying

⬥=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the defendants as those who purchased some of the goods under that account, since the jury could find therefrom, in the absence of evidence to the contrary, that the defendants had opened the account in that name, and continued to purchase the whisky shown thereon from the date of the first transaction.

8. **Criminal law ⬡365(2)—Evidence of purchase in another state admissible, as incident of unlawful transportation.**

In a prosecution for violation of the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c), evidence of the purchase by defendants of whisky in another state is competent, as showing an incident of its unlawful transportation into the state.

9. **Criminal law ⬡369(6)—Evidence as to prior transactions held admissible to rebut defense of entrapment.**

In a prosecution for unlawfully transporting intoxicating liquors into the state, where the defense was that accused was entrapped into the offense by officers, evidence tending to show similar transactions by defendants before the earliest date mentioned in the indictment is admissible to establish the good faith of the officers in co-operating with defendants in the unlawful transactions for the purpose of detecting the crime.

10. **Criminal law ⬡374—Facts relating to similar transactions creating suspicion only, admissible to rebut defense of entrapment.**

Where the defense of accused was that they were entrapped into the unlawful transportation of liquor by officers, evidence tending to show similar transactions by them before the officers began co-operating with them is admissible to show good faith of the officers, though it was insufficient to establish the guilt of defendants, and merely created suspicion against them.

11. **Criminal law ⬡369(6)—Declarations that defendants' grocery business was ostensible only held admissible although involving other transactions.**

In a prosecution for unlawfully transporting whisky into a state, where the accused claimed that they had been engaged in the grocery business, and were entrapped by the officers into committing the offenses charged, declarations by defendants that their grocery business was ostensible only, and that for years they had been engaged in unlawful transactions of the character charged, are admissible against them, though they related to other transactions than those charged in the indictment.

12. **Criminal law ⬡722(3), 1171(6)—Reference to accused as a gang held not reversible under evidence.**

Where there was evidence that defendants were organized for the particular unlawful purpose of transporting whisky into the state, a reference by the prosecuting attorney to defendants as a gang, while a harsh one, that should not be used, was not such as to make it prejudicial error for the court to refuse to caution the district attorney or to instruct the jury to disregard the remark.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Sherman Billingsley, Ora Billingsley, and Charles Clift were convicted of causing whisky to be transported from the state of Ohio into the state of Michigan, in violation of the Reed Amendment, and they separately bring error. Affirmed.

George Vandeveer and Wm. F. Connolly, both of Detroit, Mich. (Thomas F. Chawke and George F. Vandeveer, both of Detroit, Mich., on the briefs), for plaintiffs in error.

John E. Kinnane, U. S. Atty., of Detroit, Mich. (Frank Murphy, Asst. U. S. Atty., of Detroit, Mich., on the briefs), for the United States.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge.   These cases were heard and submitted together.  The plaintiffs in error were jointly indicted for causing whisky to be transported from the state of Ohio into the state of Michigan, in violation of the Reed Amendment.  The indictment contained 23 separate counts, each count charging a like offense upon different days.  The jury found the defendants not guilty on the first 18 counts, and guilty on the nineteenth, twentieth, twenty-first, twenty-second and twenty-third counts.  By the express terms of the statute of Michigan prohibiting the manufacture and sale of liquor as a beverage, that law took effect May 1, 1918.  All these offenses are charged to have been committed after that date.

The undisputed evidence offered on the part of the United States clearly established that these plaintiffs in error transported intoxicating liquors on or about the dates named in these five counts of the indictment, from the state of Ohio into the state of Michigan as a joint enterprise, in violation of the provisions of section 5 of the act of Congress approved March 3, 1917, known as the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c).  At the close of this evidence a motion was made on behalf of the defendants for a directed verdict, upon the theory that whatever the defendants had done in the way of actual transportation of this liquor was directly incited, procured, and brought about by the officers whose duty it was to prohibit such violation of the law.  This motion was overruled by the court, and thereupon counsel for defendants made a statement to the jury on behalf of the defendants, a part of which is as follows:

"Supplementing what already appears on that subject, we shall show these defendants were engaged in running a grocery store—one of them with another of the defendants as a copartner; the other, in his own individual right, Sherman Billingsley; that they had nothing to do with the liquor business, and that Chase came to them and invited them to go into this enterprise and they were merely the agents, and the court will instruct you when the proper time comes that if he caused this to be done, they are not guilty, if it was he who framed this plan as a means of getting them to engage in this business for the purpose of entrapment, then they are not guilty.  This is our defense."

Thereupon several witnesses were called and testified, on behalf of the defendants Sherman and Ora Billingsley, that Sherman Billingsley operated a grocery store on Brooklyn avenue in Detroit, and that Sherman and Ora Billingsley operated another grocery store on Porter street in that city; that they started in business about the 1st of July, and operated the same three or four months, and were frequently seen about these stores during July and August of that year.

Melvin Robinson, a witness introduced on behalf of the defendants, testified among other things that, during the time he was employed as a clerk in one of the stores operated by the Billingsleys, Sherman asked him to take a car to Toledo, and that he did drive a car to Toledo on Saturday night; that while he (Robinson) was in Toledo, Chase, who, while pretending to co-operate with the defendants was

in fact an inspector of the Michigan state food and drug department, asked him to drive a Paige car full of whisky from Toledo back to Detroit, but that Ora Billingsley would not let him do this. Thereupon the government called in rebuttal a number of witnesses, who testified as to statements made by these defendants in reference to their connection with the unlawful transportation of liquor prior to any of the dates named in either count of this indictment. At the close of all the evidence the motion for a directed verdict was renewed by the defendants and overruled by the court.

The court charged the jury very fully in reference to entrapment, and in a summary of the charge on this subject said:

"If the state authorities and Mr. Chase had reasonable grounds to suspect defendants of causing whisky to be transported into the state of Michigan, and their action and that of Mr. Chase was taken in an effort to detect crime, and not to induce its commission, then such action was lawful, and if the defendants caused the whisky in question to be transported into Michigan, as charged in the indictment, they are guilty. On the other hand, if you find that the action of the state authorities and Mr. Chase, or either of them, was taken in bad faith and for the purpose of inducing and enticing the defendants to commit the offense charged, and that they in fact induced the original intent on the part of the defendants to cause whisky to be transported into this state, then you will find the defendants not guilty."

"If, however, an intent and purpose to cause whisky to be transported into Michigan had been formed by the defendants before meeting and making arrangements with Mr. Chase, and defendants were already engaged in causing such transportation, then the action of Mr. Chase in apparently co-operating with them and aiding in such transportation, does not in any way relieve defendants of guilt, but such plan and work by Mr. Chase was proper and lawful as a means of obtaining evidence of the crime that was in fact being committed."

The court prior to this had charged that—

"Public policy forbids that officers sworn to enforce laws should seek to have them violated, and that those whose duty it is to detect criminals should create them. So that, when an officer induces a person, who has had no intention of committing a crime, to violate the law, courts will not lend their aid in punishing the person thus lured into crime."

[1] This charge clearly states the law in relation to entrapment. U. S. v. Wight (D. C.) 38 Fed. 109; Woo Wai v. U. S., 223 Fed. 412, 137 C. C. A. 604; Sam Yick et al. v. U. S., 240 Fed. 60, 153 C. C. A. 96; Grimm v. U. S., 156 U. S. 604-610, 15 Sup. Ct. 470, 39 L. Ed. 550; People v. Liphardt, 105 Mich. 84, 62 N. W. 1022; Goode v. U. S., 159 U. S. 663-669, 16 Sup. Ct. 136, 40 L. Ed. 297; Goldman v. U. S. (C. C. A. 6) 220 Fed. 57-62, 135 C. C. A. 625. The evidence offered on the part of the United States tends to prove that the public officials of Michigan were acting in good faith; that they did suspect, and had reasonable ground to suspect, that these defendants were engaged in the unlawful transportation of liquor into the state of Michigan; and that these officials made no mistake in arriving at that conclusion.

[2] The court did not err in refusing to compel the government to elect between the fifth and twenty-third counts of this indictment, because each of these counts charged an offense to have been committed on the same date. It is clear from the indictment itself that

these counts charge separate offenses. The fifth count charges the unlawful transportation of three automobile loads of whisky in bottles, aggregating approximately 750 quarts of whisky. The twenty-third count charges the unlawful transportation into Michigan of five automobile loads of whisky in bottles, aggregating 1,389 quarts of whisky. Both of these offenses might have been committed on the same date, so that these counts do not on their face, and clearly not upon the evidence, relate to the same transaction.

[3] Nor does the date in an indictment necessarily limit the prosecution to proof of the commission of the offense upon that identical date, provided the date proven is prior to the date of the filing of the indictment, and is in such reasonable proximity to the actual date named in the indictment that the defendants could not have been prejudiced or misled thereby. Section 1025, R. S. (Comp. St. § 1691); U. S. v. Molloy (C. C.) 31 Fed. 19; Dierkes v. U. S. (No. 3362, decided by this court June 7, 1921) 274 Fed. 75.

[4] In this particular case it is clear that this departure from the exact date in the indictment in no way affected the substantial rights of the defendants, or misled or prejudiced them in the preparation of their defense. Defendants offered no direct evidence tending to prove that the acts had not been committed by them as charged in the indictment. On the contrary, their sole defense was that whatever they did was directly incited and procured and caused to be accomplished by the officers whose duty it was to prevent such violation of the law. Upon that defense, upon clear, full, explicit, and correct instructions by the trial judge, the jury found against the defendants upon these five counts. Therefore, there being no conflict in the evidence as to the commission of the unlawful acts, there is no theory whatever upon which the defendants could possibly have been prejudiced by proving these acts to have been committed upon a different date than the one named in the indictment, where, as in this case, it clearly appears that notwithstanding the difference in the date proven from the date named in the indictment, the conviction is for the identical offense charged in the indictment.

[5] An amendment of this count of the indictment was not necessary. As the indictment read, the evidence of the witness Mehrtense that the offense charged in the twenty-third count of the indictment was in fact committed on the 28th of September was properly admitted.

[6] It is also insisted upon the part of the plaintiffs in error that the court erred in admitting in evidence the books of O'Neill, Weill & Co., wholesale liquor dealers in Toledo, in connection with the evidence of Julius Levy. Mr. Levy testified in part as follows:

"I am a salesman for O'Neill, Weill & Co., wholesale liquor dealers in Toledo. Last summer I also helped keep the books. I know Charley Clift, Sherman and Orrie Billingsley. I first met them about the latter part of last summer. I don't remember just when. They bought some goods from O'N. & W. last summer. I kept a record of that in my books. They bought under the name of John F. Smith. I identify Exhibit 15 as the sales book of the O'Neill-Weill Company. These pages are copies of the report furnished by the O'Neill & Weill Company to the internal revenue office."

Later he testifies that these books were kept in the regular course of the company's business, upon official forms furnished by the internal revenue collector's office, for the purpose of making report to that office of goods sold, but that they do not show payments; that payment was made at the time the goods were ordered; that Clift, Sherman Billingsley, and Ora Billingsley at different times ordered and paid for goods shown on this account in the name of John F. Smith. He also identifies Exhibit 16 "as one of our sale books known as 52–B"; that part of this account was in his own handwriting and part in the handwriting of another person formerly employed by O'Neill, Weill & Co. as bookkeeper.

[7, 8] These books were properly received in evidence. They were kept by O'Neill, Weill & Co. in the regular course of business by a person employed for that purpose. It was wholly unimportant whether the witness Levy made any or all the entries therein or not, and equally immaterial whether or not he had any recollection in reference to particular sales. The connection of plaintiffs in error with this account of John F. Smith is fully shown by the evidence of this witness. It is of no importance whether that connection is shown at the beginning of the account or in the later transaction. If they purchased whisky on this account on August 21st, and after that date, the jury had the right to find, in the absence of evidence to the contrary, that they had opened this account and continued to purchase whisky in this name from this wholesale house from the date of the first transaction. The evidence offered by the government was sufficient to require the defendants to explain their real connection with this account, if it was other and different than appears upon the face thereof and their proven connection therewith. This evidence was also competent to show the purchase of this whisky in Ohio as incident to its unlawful transportation.

[9] It is claimed upon the part of the plaintiff in error that the court erred in permitting the witness Chase to testify to certain acts previous to the 10th of August; that defendant's counsel asked that the acts in question should be brought home to some of the defendants, but that this was not done by the government's counsel, who was permitted to draw from the witness Chase the most vague and nebulous testimony as to what certain automobiles were doing. This evidence of Chase was entirely competent to establish the good faith of the government officials in arranging to secure evidence against these defendants, by pretending to join in their enterprise. Evidence had already been introduced tending to show that Chase had sought out Sherman Billingsley and had made certain propositions to him, by which Chase was to use his influence and make arrangements to bribe the state constabulary, so that the business might be conducted without interruption from these officers. It therefore became necessary as a part of the government's case to show the good faith of the state officials in entering into this arrangement, and that it was not a scheme to entrap or entice these defendants into the commission of a crime which they had no purpose or intention of committing prior thereto.

[10] To do this it became necessary to show that these officers sus-

pected, and had reasonable grounds to suspect, that the defendants were then engaged in this unlawful business. Necessarily the proofs upon which they reached this conclusion would be of vague and uncertain character. If they were in possession of proofs as definite and certain as counsel for plaintiffs in error now insist should have been offered, then there would have been no purpose in making these arrangements to secure further evidence. The testimony of Chase in reference to these automobiles and their movements, the shape and character of the packages that they were carrying, the places from which and to which they were traveling, were some of the facts upon which the state officials based their conclusion that these defendants were engaged in the unlawful transportation of whisky from Ohio into the state of Michigan, and it was the duty of the government to place these facts fairly before the jury, so that it might determine whether its officers were acting in good faith, for the purpose of detecting and punishing criminals, or in bad faith, for the purpose of inducing others to commit a crime that prior thereto they had no intention or purpose to commit, in order that they might be arrested and punished therefor.

In view of the sole defense made in this case, this evidence became of vital importance, and, no matter how vague or indefinite it may have been, nevertheless it was the evidence upon which the government asked the jury to find that this arrangement was made for the purpose of punishing criminals, and not for the purpose of creating them.

[11] The evidence of Porter, Cook, Olsen, Williams, and Chase, called by the government in rebuttal, was properly admitted. The defendants had introduced evidence tending to show that the defendants Sherman and Ora Billingsley were conducting two grocery stores in Detroit for a short time prior to and after August 10th, when they were first approached by Chase in reference to these transactions. The legitimate business may have been merely for the purpose of misleading the officers charged with the enforcement of this law, or it may have been conducted in good faith for legitimate profits. Therefore it was entirely proper for these witnesses to testify as to statements made to them by these various defendants tending to show that the retail grocery business was ostensible only, and that for years they had been engaged in this character of unlawful transactions. The fact that these admissions and statements related to other offenses than those for which the defendants were then upon trial is wholly unimportant. The government was not seeking to introduce a collateral issue as to the guilt or innocence of these defendants of other offenses. It sought simply to introduce their own statements made to these witnesses as to their connection with other offenses of a similar character. It also further appears that these statements of defendants to these witnesses tend to disprove the only defense offered upon the trial of this case.

[12] Exceptions were also taken to the argument of counsel for the government in that he referred to these defendants as "the Billingsley gang." While the term is rather a harsh one, and ought not to be used by counsel for the government, yet in this particular case it appears from the evidence, and especially from the statements made

by these defendants to various witnesses in the case, that they were organized for this particular unlawful purpose, and in view of this evidence it was not prejudicial error for the court to refuse to instruct the jury to disregard such remarks and caution the district attorney `against making them. Objections are also urged to other parts of the argument, but it does not appear that the court was asked to rule thereon, or that any exceptions were taken thereto.

A great many other errors are urged upon the attention of this court, but they are merely technical in their nature, and in no way affect the disposition of the real issue in this case. It is sufficient to say that the court did not err either in the admission or rejection of evidence, or in its charge to the jury, and that the verdict of the jury is sustained by substantial evidence.

For the reasons above stated, the judgment of the District Court is affirmed.