## The People of the State of Illinois, Defendant in Error, v. Charles Schell, Jr., Plaintiff in Error.

### Gen. No. 7,524.

1. CRIMINAL PROCEDURE—*presumption as to truth of affidavit supporting motion for continuance.* For the purposes of passing upon a motion for a continuance in a prosecution for crime, the allegations of the supporting affidavits are to be taken as true.

2. CRIMINAL PROCEDURE—*discretion of trial court in determining propriety of granting continuance.* While in general a motion for a continuance is addressed to the sound discretion of the trial court under all the circumstances of the case, and its determination thereon will not be reversed unless plainly erroneous, the trial court may not deny such a motion where the ends of justice clearly demand that it be granted, and if it is made to appear that the court has abused its discretion, its ruling will be reversed.

3. CRIMINAL PROCEDURE—*sufficiency of affidavit for continuance to show testimony of absent witness will tend to establish meritorious defense.* Where an affidavit for a continuance in a prosecution for an alleged violation of the Prohibition Act alleges that an absent witness, of whose presence at the next term of court affiant is reasonably sure, will testify to facts showing that the accused was decoyed into committing the alleged offense by agents of the State's attorney, it was an abuse of discretion on the part of the trial court to deny the requested continuance.

4. CRIMINAL PROCEDURE—*informality of supporting affidavit as ground for denying continuance where meritorious grounds shown.* Where an affidavit for a continuance presents a meritorious ground for granting the same, the motion should not be denied because of merely formal defects in the affidavit.

Error by defendant to the County Court of Henderson county; the Hon. CLINTON M. HUEY, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded. Opinion filed April 5, 1926.

MILFORD H. OLDS and E. L. MOFFETT, for plaintiff in error.

HARRY C. BLACKSTONE, State's Attorney, for defendant in error; CHARLES E. LAUDER, of counsel.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

This case comes to this court by writ of error from a judgment of the county court of Henderson county

upon a verdict of a jury finding plaintiff in error guilty of a violation of the Illinois Prohibition Act. It appears that he resided in the City of Burlington in the State of Iowa; that on the evening of October 9, 1924, he was arrested at a point in Henderson county, Illinois, about three miles east of the City of Burlington. He was riding in a Ford coupé and had in his possession five gallons of liquor. On the following day an information consisting of four counts was filed by the State's attorney, and subsequently an amended information was filed charging in the first count the unlawful transportation of liquor, and in the second and third counts the unlawful possession thereof. At the November term, 1924, of the county court, the cause was continued on motion of plaintiff in error to the February term, 1925, at which time his motion for a continuance to the June term, 1925, on the ground of the absence of a material witness, was denied and the cause tried. Upon the trial the People elected to rely upon the first count of the amended information. After the return of the verdict motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to the Illinois State Farm at Vandalia and also to pay a fine.

A number of reasons are assigned for reversal of this cause, the principal one being that the trial court erred in denying the application of plaintiff in error for a continuance. The affidavit for continuance made by plaintiff in error sets out affiant's belief that he could not safely go to trial at that time on account of the absence of Bud Ditto, a material witness; that the witness was not absent by his procurement; that the facts which could be proved by the absent witness could not otherwise be proved; that the witness, if present, would testify to the facts therein set forth from his own knowledge and not from hearsay; that such facts were necessary in order to enable the defendant to show that he had no intention of violat-

ing a law of this State or even of entering the jurisdiction of this State and that he was induced into so doing only so that he could be entrapped and arrested by officers of the law of Henderson county; that he is not guilty of the matters and things laid to his charge in the information; that a subpoena had been issued for the absent witness and that he had not then been procured to attend the trail and testify; that affiant believes that if he be not required to go to trial until the next term that Bud Ditto will be present and give testimony at the next term; that he had been informed by Ditto's wife that Ditto intended to return to that jurisdiction in May, 1925; and that he had promised to appear and testify to the truth of the statements thereinafter set forth. The affidavit further states that the said Bud Ditto, if present, would testify that on or about October 1, 1925, one Johnson came to Ditto, informed him that he was an officer of the law of this State and said: "We've got the goods on you and several others in this town for bootlegging and have had for some time, but we believe Charlie Schell is financing this ring and we want to get him before we make any arrests"; that Ditto talked with Johnson for some time and later Johnson told him that if he would induce Schell to go into Henderson county, Illinois, and violate the Prohibition Law of Illinois so that Schell could be arrested therefor, Johnson would pay Ditto $50 and would give Ditto a chance to get away so that he could not be prosecuted for his own violation; that Ditto agreed to do so and was then paid the $50 by Johnson; that on October 7 Ditto went to affiant and asked him to accompany him to a certain schoolhouse in Henderson county, Illinois; that Ditto met Johnson at the schoolhouse and, in affiant's presence delivered liquor to Johnson, and Johnson then asked Ditto to deliver more at the same place on the night of October 10 at nine o'clock; that Ditto promised Johnson to deliver the liquor at that time;

that Ditto on the morning of October 10 procured five gallons of intoxicating liquor and took it from Burlington, Iowa, and deposited it along the levee of the Mississippi River in this State; that Ditto then approached affiant and told him that he, Ditto, had been unexpectedly called out of town and could not keep his appointment with Johnson at nine o'clock that night and asked affiant if he would, as a personal favor to him, take the liquor to Johnson at the schoolhouse in Henderson county; that Ditto told affiant where the liquor had been deposited and affiant promised to deliver the liquor for him; that Ditto had no intent of leaving town and that he went to affiant on the morning of October 10 for the sole purpose of inducing affiant to go into Henderson county, Illinois, and obtain possession of the liquor so that affiant could be arrested therefor, and that the arrangement between Ditto and affiant was, on the part of Ditto, all in accordance with, and in furtherance of, the plan between Ditto and Johnson to entrap affiant in a violation of the Illinois Prohibition Act and for which Ditto had received $50 from Johnson; that Ditto never at any time received from affiant any financial assistance to violate the Illinois Prohibition Act; that the application was not made for delay but that justice may be done. The sheriff admitted in his testimony that he had a man in his employ by the name of Johnson at the time of this arrest, and that he employed him in booze investigation. He also testified that he learned there was some liquor to be delivered at this schoolhouse that night two or three days before the arrest, and that he talked it over with all three of the fellows who were there investigating, including Johnson.

The materiality of the testimony of the witness named in the affidavit and its vital importance to plaintiff in error is at once apparent. It is not against the policy of the law to find out whether offenses are

being committed although it is done by artifice or deceit, such as the use of decoy letters, writing letters under an assumed name or furnishing money to secure evidence (*People v. Hartford Life Ins. Co.*, 252 Ill. 406), where the criminal design and intent originated in the mind of plaintiff in error (*People v. Smith*, 251 Ill. 189). But an officer or prosecutor must not induce or solicit the commission of a crime by one who had no intent to commit it. (*City of Evanston v. Myers*, 172 Ill. 269; *Grimm v. United States*, 156 U. S. 604; *People v. Peters*, 265 Ill. 130.) In *Love v. People*, 160 Ill. 501, a defendant was prosecuted for a burglary in which he was induced to participate by a detective employed for the purpose of ferreting out lawlessness in the city of Momence. The detective planned the crime and with the consent of the owner of an office arranged for the safe therein to be burglarized and some money taken. The detective suggested the crime and induced the defendant to participate in it. The Supreme Court said: "To stimulate unlawful intentions for the purpose and with the motive of bringing them to maturity so the consequent crime may be punished, is a dangerous practice. It is safer law and sounder morals to hold, where one arranges to have a crime committed against his property or himself, and knows that an attempt is to be made to encourage others to commit the act by one acting in concert with such owner, that no crime is thus committed. The owner and his agent may wait passively for the would-be criminal to perpetrate the offense, and each and every part of it, for himself, but they must not aid, encourage or solicit him that they may seek to punish." The opinion further says on page 505: "Such means and agents are more dangerous to the welfare of society than are the crimes they were intended to detect and the criminals they were to arrest." In the last cited case the fact that the owner of the property consented to the supposed crime

had much to do with the decision of the court, but we regard the principles announced as applicable to the case at bar. In *Billingsley v. United States*, 274 Fed. 86, the trial court charged the jury: "Public policy forbids that officers sworn to enforce laws should seek to have them violated, and that those whose duty it is to detect criminals should create them. So that, when an officer induces a person, who has had no intention of committing a crime, to violate the law, courts will not lend their aid in punishing the person thus lured into crime." The opinion in that case clearly states the law in relation to transportation of intoxicating liquors as well as to other crimes and cites *United States v. Wight*, 38 Fed. 106, 109; *Woo Wai v. United States*, 223 Fed. 412; *Sam Yick v. United States*, 240 Fed. 60; *Grimm v. United States*, 156 U. S. 604; *People v. Liphardt*, 105 Mich. 80, 84; *Goode v. United States*, 159 U. S. 663. The same statement of the law appears in Kelly on Prohibition, page 34. The law is that decoys are permissible to entrap criminals, not to create them. There is a wide distinction between inducing a person to sell liquor who is then engaged in that business and inducing one to enter the business for the purpose of prosecuting him. If the matters to which plaintiff in error in his affidavit for continuance claims the absent witness would testify are true and upon a consideration of a motion for a continuance, they must be taken as true, then it was the purpose of Johnson to induce the plaintiff in error to transport liquor from Iowa into Henderson county, Illinois, and to commit an offense not contemplated by him, so that he might be prosecuted in the county where Johnson was a paid investigator. According to the affidavit the object sought was not to entrap a criminal already engaged in violating the law, but to create one for the purposes of a prosecution in Henderson county, Illinois. And it further appears from the affidavit that both trips

of plaintiff in error to the schoolhouse in Henderson county were the result of the original design and plan to entrap him and both must be considered as a part of one transaction which resulted in his arrest.

While it is generally held that a motion for continuance is addressed to the sound discretion of the court under all the circumstances of the case, and the reviewing court will not reverse a judgment granting or denying a continuance, unless such action is plainly erroneous, nevertheless, the discretion exercised by the court on an application for a continuance is a legal, not an arbitrary one, and is subject to revision. (4 C. J. Appeal and Error, sec. 2780.) A court cannot, therefore, refuse a continuance where the ends of justice require it, but if an abuse of discretion clearly appears, its ruling will be reversed. (6 R. C. L. Continuances, page 546; 28 L. R. A. 721.) The affidavit is technically informal in some respects, but it does show that a subpoena was issued for the witness; that such witness was only temporarily absent from the jurisdiction of the court and that affiant had good reasons for his belief that he could procure the desired testimony at the next term. The affidavit states that the witness would testify to the facts therein set forth of his own knowledge and that he has promised to return to said county in May, 1925, and that he will appear and testify to the truth of the statements therein set forth. We do not regard the informalities in the affidavit sufficient for denying the application for a continuance. Where an affidavit for continuance charges that a prosecutor has promised to give an absent witness a chance to get away, the applicant should not be held to such a very strict showing of diligence and conformity to technical formalities. Where it is evident that the testimony of an absent witness would, if believed, constitute a good defense, courts will hesitate to overrule a motion for a continuance unless constrained to do so because of want of

diligence or some other similar matter. We think plaintiff in error was deprived of a substantial, legal right, and that the trial court erred in denying the application for a continuance. The ends of justice require that a person charged with an offense shall have a reasonable opportunity to make his defense, and technical informalities should never be interposed to interfere with such rights. Other assignments of error are urged by plaintiff in error, but in view of what we have already said it is not necessary for this court to pass upon them.

The cause is reversed and remanded for the error in denying the application for a continuance.

*Reversed and remanded.*