## WARFIELD et al. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit.
January 9, 1930.

Rehearing Denied February 10, 1930.

No. 5461.

Chandler C. Luzenberg, Sr., Richard A. Dowling, and Wm. J. O'Hara, all of New Orleans, La., for appellants.

Edmond E. Talbot, U. S. Atty., of New Orleans, La., and John S. Pratt, Sp. Asst. to Atty. Gen., for the United States.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellants were convicted of using the mails in furtherance of a scheme to defraud. The only errors relied on run to the exclusion of certain evidence and the remarks of counsel for the government.

In general terms, the fraudulent scheme described in the indictment was this: Appellants, and two other named persons, acquired from the state of Texas the fee-simple title to the surface rights of 160 acres of land and certain mineral permits to prospect for coal, lignite, and sulphur on the public lands of the state; they organized under the name of the Great Southern Sulphur Company, and transferred the said land and permits to the company, for all its stock, $3,100,000 par value; they then subdivided the 160 acres of land into 69,120 lots, 10 feet square, each having 100 square feet of surface area; they pretended that the land was very valuable because of the deposits of minerals underlying it, and that from the sale price of the land they would set aside a certain portion for development; they pretended that the company owned enormous caves containing vast deposits of rich guano, and that it had acquired a soda lake near Valmont, N. M., both of which would be marketed for the benefit of the lot owners; they pretended they controlled a valuable patented process for refining sulphur. The indictment, of course, contained allegations sufficient to show the falsity of the representations made by defendants. The lots owned by the Great Southern Sulphur Company were offered for sale by defendants as its agents.

It developed in the course of the trial that at times several reputable lawyers, prominent citizens of New Orleans, had represented the Great Southern Sulphur Company as attorney, among them Luther E. Hall, a former Governor of Louisiana. He was attorney for the company from its incorporation in 1919 up to the time of his death, in November, 1921. Warfield, one of the defendants, took the stand in his own behalf, and during his examination he was asked, "Do you know what Governor Hall thought of this property?" The court sustained an objection and the answer was excluded. Counsel for Warfield then sought to introduce a copy of a telegram addressed to a Mr. F. L. Davis, dated March 14, 1921, produced from the files of the company and shown to be in the handwriting of Governor Hall, giving his opinion that the sulphur company had bright prospects and should prove a good investment. On objection by the government this telegram was excluded. A document relating to the incorporation of the sulphur company, also shown to be in the handwriting of Governor Hall, was also excluded on objection by the government.

It is contended by appellant that considering the eminent position occupied by Governor Hall, his opinion as to the bona fides of the enterprise would have had great weight in favor of appellants on the question of intent. Statements of dead men are rarely admissible except as dying declarations, and for the witness to have repeated what Governor Hall said to him would have violated the hearsay rule. As to the documents excluded, while such evidence is sometimes admitted to sustain the defense of good faith on the part of one charged with fraud, it does not appear that they were brought to the attention of appellants until long after Governor Hall's death. Furthermore, all the overt acts charged in the indictment occurred after the death of Governor Hall and after appellants had ample opportunity to investigate and decide for themselves as to the honesty of their acts. At most, the evidence would have been cumulative and of very little or no weight, considering other evidence before the jury from which it might well have been inferred that Governor Hall and other reputable men who at times were connected with the company were themselves deceived by appellants, who were in control of the business of the company.

In the course of his summation, the Assistant Attorney General, appearing for the United States, referred to the defendants as "these white collared bandits," and at another time said, "these men do not possess a single shred of character," and again, "there is not a scintilla of character inside these men."

The bill of exceptions shows no part of the remarks of counsel except the above-quoted excerpts. Standing alone, they appear to be in bad taste and unnecessary, although it is possible that their effect may have been somewhat softened by the context, as contended by counsel who uttered them, when appearing in argument on appeal. The district attorney is entitled to as much latitude in argument as counsel for the defense, but he should be careful to confine himself to reviewing the facts he considers pertinent and the deductions to be drawn from them, omitting any derogatory references to the defendants. Astute counsel, reaching for a peg upon which to hang an assignment of error, are quick to object, if the district attorney oversteps the bonds of propriety in this respect, and error may result, necessitating the reversal of what would otherwise be a correct verdict. In this case defendants had produced witnesses who testified to their good character, and the court charged the jury fully and correctly on the effect to be given previous good reputation, and in addition gave several requested charges to the same effect. The remarks were objected to in the most perfunctory manner. It does not appear that the court's attention was specially directed to the objectionable character of the remarks and a ruling provoked. It does not appear that the court was requested to rebuke counsel or to charge the jury to disregard his remarks, both of which are usually considered proper practice in laying a predicate for an assignment of error.

On the whole case it cannot be said that any substantial rights of the parties were affected by the action of the court and of counsel for the government. Act Feb. 26, 1919 (28 USCA § 391); Meyer v. U. S. (C. C. A.) 258 F. 212; Hunter v. U. S. (C. C. A.) 264 F. 831; Billingsley v. U. S. (C. C. A.) 274 F. 86.

The record presents no reversible error. Affirmed.