The People of the State of Illinois, Defendant in Error,
v. Rudolph, Alias Rudy, Steig, Plaintiff in Error.

Gen. No. 8,221.

Heard in this court at the May term, 1930. Opinion filed August 15, 1930.

C. A. PEDDERSON, for plaintiff in error.

VINCENT S. LUMLEY, for defendant in error.

MR. JUSTICE JONES delivered the opinion of the court.

The defendant, Rudolph Steig, was found guilty of violating the Illinois Prohibition Act, Cahill's St. ch. 43, ¶ 1 *et seq.* The information in the case contained three counts: The first charged an unlawful sale; the second charged unlawful possession; and the third charged unlawful transportation. By the verdict of the jury, he was found guilty "in manner and form as charged in the information." The court sentenced him to pay a fine of $300 and all costs of suit under the first count, $500 under the second count, and $500 under the third count. It was further adjudged that the defendant be imprisoned in the county jail for 90 days and that he also stand committed until said fines and costs are paid.

The defendant lived on a farm with his father near Marengo in McHenry county. About a year or two before, he had owned an interest in a business at Harvard, where cigars, candies, and soft drinks were sold. Since he disposed of his interest in that business, he had been engaged in baling straw for the Rockford Paper Mills. There was no attempt made to show that previous to the occurrence which gave rise to his arrest, he had been guilty of violating any of the provisions of the Prohibition Law.

In the neighborhood of the defendant lived a young man by the name of Andrew Soma, who had been an intimate friend of the defendant, and a frequent visitor at his home. One Saturday night Soma came to the home of defendant and told him that he was not working and had to have some money. He asked the defendant if he knew where he could obtain some alcohol. The defendant replied that he didn't know whether or not he could find him such a place. Soma then said he had a purchaser for five gallons, and he thought the defendant could help him out. The defendant agreed to do it.

On Sunday, Soma returned to the home of defendant. Soma having no automobile, the defendant's

car was used. They drove to a filling station, where they had a conversation with one of the attendants, who directed them to the home of a woman called "Helen." She lived in the country and when the defendant and Soma arrived at her house, they procured from her, five one-gallon cans of alcohol. Soma told the defendant to pay her and he, Soma, would return the money when he disposed of the alcohol. The defendant gave the woman his check for $35. The liquor was placed in defendant's car and he and Soma proceeded to the place where Soma said his purchaser would be found. On the way to this place, Soma gave the defendant a $20 bill and a $10 bill. The man who was expected to purchase the alcohol was not at the appointed place when the defendant and Soma arrived, and failed to come. The liquor was taken to Soma's home and kept there until the next evening when the two parties again went to the appointed place and the purchaser did not appear. They made a third trip on Monday night. After they had arrived, a car drove up, out of which a man got, who addressed Soma. The defendant delivered the liquor to this man, who said "There is $20 due." The defendant replied that whatever arrangements Soma had made were all right. The man gave the defendant a $20 bill. At this point, another man, who turned out to be the sheriff, jumped out of the car and approached with a gun in his hand. Defendant was arrested and taken to the county seat where he was searched. The money he had received, consisting of two $20 bills and a $10 bill, were found on his person.

It was developed upon the trial that Soma's story to the defendant that he was in need of money and had a place to sell some alcohol was a part of a scheme which had been previously laid by the sheriff and Soma to induce the defendant to violate the law. Soma had no bona fide purchaser in mind. The alleged prospective purchaser was a deputy sheriff, named

Pratt, with whom the defendant was unacquainted. Soma's pretense that he had no money with which to pay Helen was false. He then had in his pocket the $20 bill and $10 bill which he afterwards gave the defendant. These bills were marked bills, prepared for the occasion. The bills were marked and delivered to Soma by the sheriff. The $20 bill, which Pratt gave the defendant, was marked by the sheriff, and delivered to his deputy for the sole purpose of turning it over to the defendant. The money was marked so that it could be identified by the sheriff, after he had taken it from defendant in a search. Every step in the entire affair, from the time the proposition to violate the law was made to the defendant, down to and including the time of his arrest and search, was planned by the sheriff and those who were assisting him. That the defendant fell a willing and easy victim to their plans, furnishes no excuse for their conduct. It is not against the policy of the law to find out whether offenses are being committed, although it is done by artifice or deceit, where the criminal design or intent originated in the mind of the violator. (*People v. Smith,* 251 Ill. 185, 189; *People v. Hartford Life Ins. Co.,* 252 Ill. 398, 406.) But an officer or prosecutor must not induce or solicit the commission of a crime by one who had no intent to commit it. (*City of Evanston v. Myers,* 172 Ill. 266; *People v. Peters,* 265 Ill. 122.)

The Supreme Court in *Love v. People,* 160 Ill. 501, declared that to stimulate unlawful intentions for the purpose and with the motive of bringing them to maturity so the consequent crime may be punished, is a dangerous practice. It further declared that "Such means and agents are more dangerous to the welfare of society than are the crimes they were intended to detect and the criminals they were to arrest." In *Billingsley v. United States,* 274 Fed. 86, the trial

court charged the jury: "Public policy forbids that officers sworn to enforce laws should seek to have them violated, and that those whose duty it is to detect criminals should create them. So that, when an officer induces a person, who has had no intention of committing a crime, to violate the law, courts will not lend their aid in punishing. the person thus lured into crime."

In *People v. Schell*, 240 Ill. App. 254, the facts showed that an officer employed Ditto to induce the defendant to transport liquor from Iowa to Henderson county, Illinois. Ditto was to receive $50 for his services. This court held that there is a wide distinction between inducing a person to sell liquor, who is then engaged in that business, and in inducing one to enter the business for the purpose of prosecuting him. In that opinion we reviewed at considerable length the decisions of the various jurisdictions upon the question of entrapment, and we held the law to be that decoys are permissible to entrap criminals, but not to create them. The record in this case is devoid of any testimony even tending to show that the defendant had previously violated the Prohibition Law. It contains nothing but a suspicion arising from the fact that the defendant had at one time been in the business of selling soft drinks. This testimony was improperly admitted on cross-examination over the objection of defendant's counsel.

Under the law of this State, based upon firmly established principles of justice, convictions obtained by the methods employed in this case cannot be permitted to stand.

Aside from the consideration arising out of the entrapment of the defendant, the judgment is erroneous upon another ground. The verdict was a general one finding the defendant guilty; that is to say, it found him guilty of (1) unlawfully selling intoxicating liquor

(2) of unlawfully possessing it, and (3) of unlawfully transporting it. Separate fines were imposed under each count and then the judgment ordered the defendant to be imprisoned in the county jail for 90 days. The judgment of imprisonment was a blanket judgment and by its terms was not imposed under any specific count. This was erroneous. The sentence of imprisonment cannot be apportioned among the three counts, because the minimum sentence provided by law for conviction under any count is 60 days, so that a 90-day imprisonment can refer to only one conviction. Furthermore, the law does not provide for fine and imprisonment for possession of intoxicating liquor as a first offense. (*People v. Hollenbeck,* 322 Ill. 443.) While the trial court may, in its discretion, cumulate the punishment fixed for the conviction on different counts of an indictment, the punishment on each particular count, and with reference to such count, must be specified. (*People v. Barney,* 217 Ill. App. 322; *People v. Elliott,* 272 Ill. 592.)

The judgment makes no effort to cumulate sentences. It is a unit as to that part which imposes a penalty of imprisonment. It cannot be remedied by an order to resentence and is therefore void. This is demonstrable: if the defendant should so desire, he might pay the fines imposed under the first and third counts. It would then be impossible to imprison him under the second count as it charges possession, and the law does not provide both fine and imprisonment for that offense.

For the reasons herein stated, the cause is reversed and remanded.

*Reversed and remanded.*