STATE v. E. L. GIBBS.[1]

December 10, 1909.

Nos. 16,280—(18).

**Illegal Sale of Liquor — Word "Beer" — Witness.**

Two plain clothes men, pursuant to invitation by two women, went with them to defendant's hotel, and bought and paid for what they testified was beer. It is *held:*

1. "Beer," as used by the witnesses, may properly have been understood as the fermented malt liquor commonly known as beer.

2. The officers, who had been engaged in ascertaining whether an unlawful business was being carried on, were not rendered incompetent to testify, as having procured the violation of law by soliciting an illegal sale.

3. Defendant's conviction was properly sustained.

Defendant was convicted in the municipal court of Minneapolis of selling intoxicating liquor without a license. From the judgment and sentence imposed by the court, Charles L. Smith, J., and from

[1]Reported in 123 N. W. 810.

an order refusing to dismiss the action, defendant appealed. Affirmed.

*Richard & Coe,* for appellant.

*Frank Healy,* City Attorney, and *John A. Dahl,* Assistant City Attorney, for the State.

JAGGARD, J.

Defendant was convicted of selling liquor without a license. This appeal was taken from the judgment entered and the sentence imposed by the court, and from its refusal to dismiss said action and charge and complaint made against defendant.

The first proposition argued for defendant is that the state did not present proof sufficient to warrant a conviction of the charge that defendant sold beer or malt, which was a fermented and an intoxicating liquor. The objection is that "the state offered proof only that the substance sold was beer, without more."

The record shows that about midnight two police officers dressed in plain clothes met two girls, who asked the officers to go with them and have something to drink. One of the officers testified: "I asked them where. They said, 'Right across the street at the Boy Hotel.' I said, 'We can't get anything there.' They said, 'Yes; we can.' 'Well,' I said 'let us go and try if we can.' I registered in the hotel register book for three of us. One of the girls did not come until later." The girl asked defendant if they could have something to drink. One of the officers remarked that they did not want malt, but beer. Defendant replied that she had nothing but beer; that they could have Budweiser beer, and assured them that it was the pure stuff. She then brought in a quart of beer, for which one of the men paid her fifty cents. Later the second girl came into the room, and one of the officers asked for more beer, for which fifty cents a bottle was also paid. The label on the bottle read "Budweiser beer." There was an abundance of testimony that the witnesses were familiar with the taste of beer, and knew beer, and that the liquor sold by defendant was beer.

The ingenuity and industry of counsel for defendant has collated many cases which, he insists, demonstrate that under these circum-

stances defendant had not been shown to have sold intoxicating liquors. It would only incumber the record to detail the points of difference. The direct testimony in this case was clear and positive that the defendant sold them beer. In State v. Dick, 47 Minn. 375, 376, 50 N. W. 362, 363, Dickinson, J., said: "We think that it would be commonly understood that by the word 'beer,' as used by the witnesses to designate the liquor furnished and drunk under the circumstances stated, was meant the fermented malt liquor commonly sold at such places, and that, if it had been intended to refer to any other kind of beer, such as ginger beer, root beer, or the like, some qualifying word of description would have been used with the word 'beer.'" And see State v. Tisdale, 54 Minn. 105, 55 N. W. 903; State v. Gill, 89 Minn. 502, 95 N. W. 449. As to the qualification of police officers as experts on beer, see State v. Olson, 95 Minn. 104, 103 N. W. 727. Moreover, the circumstances are significant in the extreme. If as the defense contends, this court, to sustain the conviction, "would have to take a stand in advance of its previous decisions," the testimony in this case justifies and requires that progression.

The second defense was that the act of alleged guilt was brought about by police officers of the city of Minneapolis. The very men "whose duty it was to prevent law violation * * * [sought] to bring it about, connive at it, and all that was done was done under and in pursuance to their suggestion and request." The government agent was, therefore, not engaged in detecting crime, but procuring its commission. U. S. v. Adams (D. C.) 59 Fed. 676.

In Saunders v. People, 38 Mich. 218, it was said: "Some courts have gone a great way in giving encouragement to detectives in some very questionable methods adopted by them to discover the guilt of criminals; but they have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who may, under a mistaken sense of duty, encourage and assist parties to commit crime, in order that they may arrest and have them punished for so doing." And see Blaikie v. Linton (1881) 18 Scottish L. R. 583; White v. Arthur (C. C.) 10 Fed. 97-98; People v. McCord, 76 Mich. 200, 42 N. W. 1106. The defendant concludes: "There was no mere in-

quiry for information, but there was a design to get liquor contrary to law, and a direct solicitation of defendant to get that liquor."

This argument, however, does not controvert the facts, sufficiently shown, that the statutes had been violated, and that defendant had committed an offense. Moreover, according to the settled law of this state the fact that the officers purchased beer did not render them particeps criminis. Nor does the further fact that they were in pursuit of evidence against persons selling liquor contrary to law make them accomplices. State v. Baden, 37 Minn. 212, 34 N. W. 24. And to adopt the language of Mr. Justice Brewer in Grimm v. U. S., 156 U. S. 604, at page 610, 15 Sup. Ct. 470, at page 472, 39 L. Ed. 550: "It does not appear that it was the purpose of the postoffice inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business." Andrews v. U. S., 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023, to which the defense refers us, tends, indeed, to sustain this conviction. So in Campbell v. Com., 84 Pa. St. 187, the testimony of Detective McParlan exposing the famous Molly Maguire conspiracy was received. The court, per Sterrett, J., held that "a detective who joins a criminal organization for the purpose of exposing it and bringing criminals to punishment, and honestly carries out that design, is not an accessory before the fact, although he may have encouraged and counseled parties who were about to commit crime, if in so doing he intended that they should be discovered and punished, and his testimony, therefore, is not to be treated as that of an infamous witness." This and many other authorities will be found collated in 12 Cyc. 447.

Affirmed.