### UNITED STATES v. AMO.

(District Court, W. D. Wisconsin. September 18, 1919.)

CRIMINAL LAW ⊕=37—ENTRAPMENT AS DEFENSE; SALE OF LIQUOR TO INDIANS.

   A conviction for selling liquor to Indians *held* not invalidated because a government agent, having reports of illegal sales by defendant, employed and sent two full-blood Indian men to defendant's saloon, where on merely asking for whisky they were sold several drinks.

Criminal prosecution by the United States against Albert Amo. On motion by defendant for arrest of judgment. Denied.

Albert C. Wolfe, U. S. Dist. Atty., of La Crosse, Wis.
Frank B. Lamoreux, of Ashland, Wis., for defendant.

SANBORN, District Judge. Several cases have been tried at this term which involve the question of the right of government agents to

make use of Indians to obtain intoxicating liquor at saloons, and show substantially the same facts. There have been several convictions in cases involving the question of the use of these decoys, in which proper motions have been made so as to save the question.

It appears that two full-blood Indians, strong, stalwart specimens of the race, living on the Lac du Flambeau reservation, were hired by the agent to go to Saxon, some distance from Flambeau, and visit a certain saloon for the purpose of buying liquor. The two Indians, and the agent, went together to Saxon, and the Indians went to the saloon and bought, and in the space of two hours consumed, each 12 drinks, and purchased a half pint bottle of whisky. The agent did not go with them into the saloon, or visit it at any time. There was no persuasion or deception whatever. The Indians simply went up to the bar and said "Whisky?" which was continuously furnished them until each had had 12 whisky glasses filled to the top (in Indian fashion). All the whisky was paid for with money furnished by the agent of the government, who also paid all the railroad fare to and from Saxon, and wages to each of the Indians at $3 a day.

On these facts defendant's attorney moves to direct a verdict for defendant at the close of all the evidence, which was overruled, with the direction that, in case of a verdict of guilty, the objection might be raised in any proper way. A motion is now made in arrest of judgment. It is urged on the part of the defendant that, while decoys are permissible to entrap criminals, they are not to create them—to present opportunity to those having intent or willing to commit a statutory crime, but not to ensnare the law-abiding into unconscious offending, substantially quoting from United States v. Healy (D. C.) 202 Fed. 349. In the Healy Case defendant was charged with selling liquor to an Indian, but supposed him to be a white man, so that the case may be said to have included the element of deceit. The court says:

"The case at bar is not of those where the actor knows his act violates the law."

Most of the decisions where defendant has been discharged are those in which he was enticed or expressly persuaded to make the unlawful sale or do the unlawful act, and not where the government merely furnished the opportunity to a person willing to offend. Such is the case of Voves v. United States, 249 Fed. 191, 161 C. C. A. 227, in this circuit, where the defendant supposed the Indian was a Mexican, and this was known to the government detectives, by whom the Indian was induced to buy the liquor, but who did nothing to correct the impression of defendant in respect to the buyer's race. The element of deceit was also present in Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604, Sam Yick v. United States, 240 Fed. 60, 153 C. C. A. 96, and Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509. The question is settled for this circuit by Goldstein v. United States, 256 Fed. 813, —— C. C. A. ——.

In the present case Indians visit a saloon and buy liquor from a person who is entirely ready and willing to sell to them, without any de-

ceit or persuasion whatever. They simply approach the bar and say "Whisky?" which may be the only English word they know (and, as one of the Indians said, that is enough to know). They merely gave defendant the opportunity to violate the law, without any persuasion to or deception of a willing law-breaker, who knowingly and promptly furnishes the liquor, well knowing that whisky is the cause of most of the evils which beset the Indian, most of the crimes on Indian reservations, and that the government has sought in every possible way to keep the poison away from them. It is to be hoped that the reign of this monster is nearly over.

Another aspect of the case is presented by the charge of Judge Geiger in a recent trial at Milwaukee in the case of United States v. Lagers. It appears that three Indian women from the Menominee reservation had been at Milwaukee as witnesses before a grand jury, and on their way home they were taken to a saloon by a special agent for the suppression of the liquor traffic among the Indians. There they bought liquor and became intoxicated. Judge Geiger instructed the jury to find for the defendant, on the ground that it is against public policy for the United States, as a guardian for the Indians, to get its Indian ward drunk for the purpose of suppression of the traffic. Judge Geiger said:

"I am willing to grant that the government should resort to vigorous and aggressive means for the enforcement of this law, for the investigation of alleged violation, and for the apprehension of those who are believed to be guilty of violation; but I cannot and will not bring myself to believe that another department of the government can, as was done in his case, take one of its own wards and have her participate in what, according to the testimony of these three women, was a debauch in liquor during an hour or an hour and a half, with the government agent standing by, making not a word of protest, and then put it up to a court of justice, with the idea that the testimony shall be brought into court from the mouths of these witnesses, that a jury should be asked to convict upon that testimony, and that the court should read that verdict into a solemn pronouncement of guilt, entailing the penalty of this law. * * * It cannot be that the rule permitting decoy evidence is wholly without limit, and that the court must at all times ignore the fact and extent of its use, to say nothing of its manifest abuse. At any rate, I shall not feel bound to recognize its use to an extent which involves ignoring on the part of the government for the time being the other plain obligations which it, as guardian, owes to these Indians as wards. Neither is it incumbent upon me to define the exact limits within which it may be used; and I feel that it is my plain duty, a duty owing to the court as an instrumentality for the enforcement of the law, to assume the burden of stopping the case right here, myself, and your verdict will be that you find the defendant not guilty."

I do not think that the rule applied by Judge Geiger should be adopted here. The means for the suppression of the liquor traffic is a matter governed almost entirely by political or administrative considerations, with which the courts have no concern except in the case of grave abuse. It is one thing for an Indian agent to connive or procure the debauchery of Indian women, who are peculiarly susceptible to the alcoholic influence, and a different one for him to hire a stalwart male of the tribe to buy liquor, in order to stop the business in that particular locality. It is well known that a small amount of liquor robs an Indian woman of all sense of chastity or decency—destroys all her

moral resistance. The facts in the Milwaukee case showed a flagrant abuse of the agent's duty. It appears that the saloon where the woman obtained the liquor was 45 miles from the reservation, while Saxon is 55 miles away. It does not appear that there had been any reports to the agent of sales of liquor to Indians in that vicinity. In this case, agents have such reports. I think that in this particular case the government was justified in resorting to this means for arresting the sale of liquor at Saxon. Clearly the political department should not be restrained by the judicial except in a clear case.

The motion in arrest of judgment is denied.