## BUTTS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. May 4, 1921.)

No. 5700.

**1. Criminal law ⬅37—Entrapment held a defense.**

Where a defendant, charged with unlawful sale of morphine, was not and had never been a dealer in the drug, had none, and had never before sold any, nor conceived an intention to do so, but was induced by an acquaintance, who knew he had become addicted to its use when in pain caused by a long-standing disease, to procure a quantity for him from a third person, which he did, promising to pay over the money he received to such person, the whole transaction being a device of internal revenue agents, who furnished the money, to entrap, arrest, and prosecute him, these facts were fatal to the prosecution.

**2. Criminal law ⬅37—Duty of officers to prevent, not to incite, crime.**

The first duties of officers of the law are to prevent, not to punish, crime, and it is not their duty to incite to and create crime, for the sole purpose of prosecuting and punishing it.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Criminal prosecution by the United States against C. O. Butts. Judgment of conviction, and defendant brings error. Reversed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John H. Hopkins, of Omaha, Neb. (E. D. O'Sullivan, of Omaha, Neb., on the brief), for plaintiff in error.

Frank A. Peterson, Asst. U. S. Atty., of Omaha, Neb. (Thomas S. Allen, U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. Clarence O. Butts, the defendant below, was indicted, convicted, and sentenced for a violation of the Anti-Narcotic Act (6 Comp. Stat. §§ 6287g, 6287h; 1 Supp. 1919, § 6287g), in that he, being a person who dealt in, sold, and dispensed narcotic drugs, without registering with the collector of internal revenue or paying the special tax imposed upon such dealers by this act, sold to H. Rudolph three-fourths of an ounce of morphine sulphate, of the value of $190, about April 7, 1920.

Counsel for the defendant below have specified many alleged errors in the trial of this cause, one of the most serious of which is that the trial court denied a request of counsel for the defendant to instruct the jury that the defendant claimed that he was entrapped into delivering to Rudolph the morphine in question by the instigation of the government agents; that, had it not been for the importunities and false statements made by Rudolph pursuant to the directions of the government agents, who started out admittedly for the purpose of entrapping the defendant into the commission of the offense charged against him, he would not have conceived or committed it; and that if the jury believed from the evidence that the defendant was induced by the importunities of Rudolph, acting under the orders and in conjunction with the government agents, to violate the law, and that through the instigation of these men the defendant was induced to sell or deliver to Rudolph the morphine, and that he would not otherwise have violated the law, they ought to return a verdict of not guilty. At the close of the trial when this request was made, these facts had been established by the evidence:

[1] The defendant, during 14 years prior to April 6, 1920, had suffered 18 operations for tuberculosis of the bones, and he had been and was addicted to the use of morphine when he was in pain. He had never sold or dealt in the article prior to the transaction of about the 7th of April, 1920, which was the basis of his prosecution in this case. H. Rudolph was addicted to the use of morphine, and these two men were acquainted each with the other, and each knew that the other was addicted to this use. Rudolph had never obtained any morphine from the defendant prior to this transaction. Rudolph had been arrested about two weeks prior to the 2d of April for the violation of this Narcotic Act. Previous to that arrest he had been convicted of a prior violation of the act, and had served a year and a day at Leavenworth. Clyde Lake was a narcotic inspector in the Internal Revenue Service of the United States. He had arrested Rudolph about two weeks before April 7, 1920. Rudolph testified that while he was thus under arrest Mr. Lake sent for him to meet him at Green Davenport's house; that

they met there; that Lake told him that he would let him go, if he would help him catch some of the law violators; that after they had talked this proposition over, and made an agreement between him and Lake and other officers of the government to catch Butts, he called the latter up on the telephone, told him he wanted some morphine, and Butts answered that he had none, and then Rudolph asked him if he could get an ounce, and how much it would be, and the defendant told him to call him the next day. He testified that he did not intend to use this ounce of morphine, but intended to get it so that the officers could arrest Butts, and he could be a friend of the officers; that the next day he called Butts again, and Butts told him he could get the morphine for $190; that Lake furnished Rudolph with the $190, and sent him to get the morphine, and as it was delivered by Butts to Rudolph the officers arrested Butts. Lake testified that the telephone calls and conversations of Rudolph with Butts were had when he was present with Rudolph; that he furnished the $190 and directed all the proceedings in which Rudolph took part. Butts testified that Rudolph called him on the telephone and asked him if he could get him some morphine; that Rudolph told him that he was sick and that his wife was sick (Rudolph denied that he told Butts of this sickness); and he (Butts) told Rudolph he could not get any, and he did not have any himself, and Rudolph replied that he would call again the next day; that Rudolph called him again the next day, and he told him he had no morphine; that Rudolph then asked him if he could not get him some off of somebody, and thereupon he did get a box of it of Joe Green, and arranged to meet Rudolph and deliver it to him; that he did not buy the morphine from Green, but was to give to Green just what he got from Rudolph for it. There was some other evidence in the case, but it was not material to the question under consideration.

When the entire evidence in this record is considered, it conclusively proved (1) that the defendant was not and never had been engaged in dealing in morphine, and that he never sold any of it to any one before the transaction here in issue; and (2) that the conception of and the intention to do the acts which the defendant did in this matter did not originate in his mind or with him, but were the products of the fertile brains of the officers of the government, which they instilled into the mind of the defendant, and by deceitful representations and importunities lured him to put into effect.

It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the accused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution. Price v. United States, 165 U. S. 311, 315, 17 Sup. Ct. 366, 41 L. Ed. 727; Grimm v. United States, 156 U. S. 604, 610, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 669, 16 Sup. Ct. 136, 40 L. Ed. 297; Andrews v. United States, 162 U. S. 420, 423, 16 Sup. Ct. 798, 40 L. Ed. 1023; Fiunkin v. United States (C. C. A.) 265 Fed. 1.

But when the accused has never committed such an offense as that charged against him prior to the time when he is charged with the offense prosecuted, and never conceived any intention of committing the offense prosecuted, or any such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged, in order to entrap, arrest, and prosecute him therefor, is and ought to be fatal to the prosecution, and to entitle the accused to a verdict of not guilty. Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509; United States v. Echols (D. C.) 253 Fed. 862; Sam Yick v. United States, 240 Fed. 60, 65, 67, 153 C. C. A. 96; Voves v. United States, 249 Fed. 191, 192, 161 C. C. A. 227; Peoples v. McCord, 76 Mich. 200, 42 N. W. 1106, 1108; Woo Wai et al. v. United States, 223 Fed. 412, 414, 137 C. C. A. 604. There was ample, if not conclusive, evidence in this case to sustain a finding of the jury that this case fell under the latter rule. The defendant had never committed any such offense as the officers of the government arrested and prosecuted him for prior to the time when they induced him to do the acts disclosed by this testimony. There is no evidence that he had ever contemplated, much less intended to sell any morphine. He had never done so—he had none to sell. The officers, through their agent, Rudolph, incited, lured, and persuaded him by false representations to go to a third person and get the morphine for his acquaintance, the officer's agent, and to consent either to sell it or to act as the agent of the party from whom he received it in the sale the officers betrayed him into.

[2] The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it. It was fatal error to refuse to instruct the jury as requested, and it is unnecessary to discuss the other alleged errors at the trial, because, if they existed, they will probably not be committed again.

Let the judgment below be reversed, and let the case be remanded to the court below, with directions to grant a new trial.