## ZUCKER v. UNITED STATES.

### KRIVIT et al. v. SAME.

(Circuit Court of Appeals, Third Circuit. March 16, 1923.)

Nos. 2930, 2931.

1. Conspiracy ☞43(6)—In indictment for conspiracy to commit an offense, such offense need be described only sufficiently to identify it.

In an indictment for conspiracy to commit an offense, such offense need not be described with the particularity required in an indictment for the offense itself, but only sufficiently to identify it.

2. Criminal law ☞37—Defense of entrapment.

Where government agents, suspecting persons of committing crime, make a proposition that they commit the crime for profit, and they, thinking that the agents are their ordinary partners, willingly enter into the agreement to commit the crime and do so, they cannot escape the consequences on the ground that they were entrapped.

3. Criminal law ☞37—Not a defense that government officers participating did not intend consummation of conspiracy.

That government officers, who participated in a conspiracy to commit an offense, did not intend that such offense should be consummated, does not constitute a defense by the defendants, who did so intend,

who cannot plead that they would not have violated the law if negotiations with them had not been entered into by the officers.

**4. Criminal law ☞37—Entrapment held not defense by defendant charged with conspiracy.**

One of a number of defendants charged with conspiracy to violate the Prohibition Act (41 Stat. 305) *held* not entitled to acquittal on the ground of entrapment because, when approached by government agents for purchase of liquor, he told them he did not handle it, where he willingly put them in communication with others who did, and with whom the purchase was negotiated.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Criminal prosecutions by the United States against Benjamin F. Zucker and against Samuel Krivit, Bernard Cohen, and Harry Titlebaum. Judgments of conviction, and defendants bring error. Affirmed.

Certiorari denied 43 Sup. Ct. 525, 67 L. Ed. ——; 43 Sup. Ct. 703, 67 L. Ed. ——.

Robert H. McCarter and G. W. C. McCarter, both of Newark, N. J., for plaintiff in error Zucker.

Warren Dixon, of New York City, and Mark Townsend, Jr., of Jersey City, N. J., for plaintiffs in error Krivit and others.

Frederic M. P. Pearse, of Newark, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The indictments on which the defendants were tried and convicted charged them with conspiracy unlawfully to "possess, sell, and transport intoxicating liquors, prohibited by law, containing more than one-half of 1 per cent. of alcohol by volume and fit for use for beverage purposes." To effect the object of their conspiracy the indictment charged that on January 28, 1922, Millard Van Blaricom and Harry T. Clark conveyed in an automobile Charles H. Scandalis, Charles E. Phillips, and John T. Richardson from the city of Newark to the place of business of Samuel Krivit and Barney Cohen at 85 Fairmount avenue in the city of Jersey City, N. J., where Krivit, Cohen, Titlebaum, and Zucker did unlawfully sell to Scandalis and Richardson 14 barrels of alcohol, being intoxicating liquor, prohibited by law, containing more than one-half of 1 per cent. of alcohol by volume and fit for beverage purposes; that Titlebaum and others took the alcohol from the storehouse of Cohen and Krivit for the purpose of placing it on a truck, whereupon Richardson paid Cohen on account of the sale $350.

The testimony of the government tends to establish the following facts:

Charles Scandalis, a prohibition agent, came to Newark from Washington, and met Van Blaricom, whom he had previously known, and who was then in the automobile business. Scandalis had formerly been in the bootlegging business, and while in that business was known by Van Blaricom. He told Van Blaricom that he wanted to buy some alcohol. Van Blaricom went to the drug store kept by Zucker and asked him where he could obtain alcohol or whisky. Zucker said that he did not handle it himself, but it might be possible that he could get

in touch with some one who did. The following day, Saturday, Van Blaricom and Scandalis went back to Zucker's store, and Zucker told them "that he had not been able to do anything so far, but would let [them] know a little later"; that "his people were out of town." The following Thursday Van Blaricom and Scandalis went again to the store of Zucker. At these meetings the conversation related to the purchase of alcohol, which was to be sold to them at "approximately $10 a gallon." On the following day, Friday, Van Blaricom, Scandalis, Phillips, an internal revenue agent, Clark, and a man by the name of Schwartz drove to Zucker's store. Scandalis, Van Blaricom, and Phillips went into the store, while the others remained in the car. Zucker was shown a roll of bills, whereupon he said:

"All right; if you really mean business, I will see what I can do."

He further said that he would be able to tell them something definite in about an hour. In an hour Van Blaricom called up Zucker, who told him that he would not be able to do anything that day, but would probably be able to do something the next day, which was Saturday.

The next day Van Blaricom, Scandalis, and Clark went to Zucker's drug store, and while they were there Krivit came in and was introduced to Clark and Van Blaricom. He said, "I suppose you are here on the same business I am." Zucker told Van Blaricom that Krivit was the man that he had in mind to furnish the alcohol. That Saturday afternoon Van Blaricom, Scandalis, and Clark got a truck and went to Krivit's junk shop. While there Scandalis called Zucker on the telephone at his drug store, and told him to come to Krivit's place of business, but he refused. Clark ran down in an automobile for him, but he still refused to come. Upon Clark's return 14 barrels of alcohol were brought out of Krivit's storehouse. It was tested and ready to be loaded on the truck in the presence of Cohen, Krivit, Titlebaum, Van Blaricom, Clark, and Richardson. While Krivit was writing out a so-called permit on a blank used by the Prohibition Department, and known as "form No. 1410," Richardson paid Cohen $350 on the alcohol and immediately thereafter the disguise was thrown off and the defendants were arrested. Zucker, Cohen, Krivit, and Titlebaum were tried, convicted, and have brought their writ of error to this court to review the judgment of the District Court.

There are 24 assignments of error, but the principal ones relate to two propositions:

[1] 1. The indictment does not sufficiently charge a crime.

The same questions raised in this indictment were raised in the case of Peter Rulovitch et al. v. United States (C. C. A.) 286 Fed. 315. Substantially the same language was used in charging the crime in that indictment as is used in this one. Our decision in that case disposes of the contentions here made, and we will not repeat what Judge Woolley there said.

2. Government agents induced the defendant to commit the crime and participated in all that was done, but in fact they never anticipated a real sale of alcohol, but only the entrapment of the defendants.

We are in harmony with the law as declared in the many cases cited by counsel. It is unlawful for a government official to induce a per-

son to commit crime in order to obtain a conviction of him. If such official by persuasion and false representation incites and lures a defendant to commit a crime in order to entrap him, a conviction based thereon will not be sustained, on the ground that it is against public policy. Butts v. United States (C. C. A.) 273 Fed. 35, 18 A. L. R. 143; Lucadamo v. United States (C. C. A.) 280 Fed. 653; State v. Dougherty, 88 N. J. Law 209, 96 Atl. 56, L. R. A. 1916C, 991, Ann. Cas. 1917D, 950. The difficulty about the defendant's contention is that the facts do not bring it within the rule of law laid down in the cases cited. It cannot be maintained with any plausibility whatever that any of the defendants, except Zucker, were induced to commit the crime.

In the case of Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604, Woo Wai was not suspected of committing any such crime as that for which he was indicted and convicted. A confidential agent of the Immigration Commission suspected that he knew something of previous unlawful importations of Chinese women involving certain officers of the Immigration Commission. He thought, if he could induce and lure Woo Wai to commit a crime, he would thus obtain a "hold" on him, by means of which he could force him to disclose the information he possessed against the immigration officers. He took Woo Wai from San Francisco to San Diego, "more than 500 miles away, and there coaxed, persuaded, and urged him into the commission of the acts upon which the indictment was based, at the same time promising the protection of the officers of the United States," showed him how they could make money, etc., but Woo Wai said it was against the law and he did not want to do it. Government officials continued to work on Woo Wai for nearly two years before he yielded and committed the crime. It was never intended anyway that the crime should be committed. The officers intended to prevent the consummation of the crime. Since the intent to commit the crime had its origin in the mind of government officers, and Woo Wai had never even been suspected of being in such a crime, it was held to be against public policy to sustain the judgment of his conviction.

In Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509, two or three soldiers, who were stopping at the hotel of the defendant, begged, coaxed, and nagged her for three hours to sell them a "couple of cold bottles of beer." She stubbornly refused for three hours. She was "all excited" and then yielded to their entreaties. There was no evidence that she had ever sold beer before. The Circuit Court of Appeals for the Ninth Circuit held that:

"It is the settled rule in this circuit that, where the officers of the law have incited the person to commit the crime charged, and lured him on to its consummation with the purpose of arresting him in its commission, the law will not authorize a verdict of guilty."

Butts v. United States (C. C. A.) 273 Fed. 35, 18 A. L. R. 143, was cited in support of defendants' contention. Butts was afflicted with tuberculosis of the bones. Eighteen operations to remove pieces of bone had been performed on him. He had become addicted to taking narcotic drugs when in severe pain. One Rudolph, who had served a year

and a day in the federal prison at Leavenworth as a drug addict, was arrested again by a narcotic inspector, and was told that, if he would help catch some of the law violators, "he would let him go." Thereupon Rudolph called Butts on the 'phone and begged him to get for him an ounce of morphine, as both he and his wife were sick. Butts procured some from Joe Green—did not buy it, but was to give Green just what he got from Rudolph. Judge Sanborn, speaking for the Eighth Circuit Court of Appeals, said:

"When the entire evidence in this record is considered it conclusively proved (1) that the defendant was not and never had been engaged in dealing in morphine, and that he never sold any of it to any one before the transaction here in issue; and (2) that the conception of and the intention to do the acts which the defendant did in this matter did not originate in his mind or with him, but were the products of the fertile brains of the officers of the government, which they instilled into the mind of the defendant, and by deceitful representations and importunities lured him to put into effect."

The general language used in these cases must be construed in the light of the facts to which it was applied, and not as a general statement of the law, regardless of particular facts.

[2, 3] Where government officials, suspecting persons of committing crime, make a proposition that they commit the crime for profit, and they, thinking that the officers are their ordinary partners, willingly enter into the agreement to commit the crime and do so, they cannot escape the consequences of their conduct on the ground that they were induced to commit the crime and were entrapped. Lucadamo v. United States (C. C. A.) 280 Fed. 653, 658. Even if the object of the conspiracy in the minds of the government officials was not to be consummated, this does not vitiate the judgment, and the defendants cannot plead in defense that they would not have violated the law if inquiry had not been made of them and negotiations had not been entered into with them by government officials. Grimm v. United States, 156 U. S. 604, 610, 15 Sup. Ct. 470, 39 L. Ed. 550.

[4] While the government officials were persistent in having Zucker bring them into communication with persons from whom they could secure alcohol, yet when they approached him, although he said that he did not handle it himself, he did not hesitate to communicate with the other defendants and have them enter into negotiations for the sale of alcohol. He explained his knowledge that Krivit and Cohen could sell alcohol to Van Blaricom by saying that, the day before the arrest, a salesman was in his store and gave him the telephone number and name of Krivit and Cohen as persons who dealt in alcohol, and it was by means of this information that he was able to bring the government officials and defendants together. The jury might well have disbelieved Zucker's explanation, in view of the fact that Cohen is his brother-in-law. But, however that may be, Zucker's willingness to assist in the commission of the crime is unexplained. While the government officials went to his store quite a number of times, it does appear that Zucker was never really induced and lured into committing the crime against his will, but, on the contrary, from the very start he was willing to assist the officials in entering into an arrangement with the defend-

ants to purchase the alcohol. He was apparently willing to go along and assist in the enterprise, provided he saw the money. He nowhere appeared unwilling to help. The delay seemed due to tardiness in producing the money to consummate the deal. The facts in this case are so unlike those in the cases cited that the language used in them is inapplicable here.

We are of opinion that the trial was without error, and the judgment of the District Court is affirmed.