## SORRELLS v. UNITED STATES.
### No. 3168.

Circuit Court of Appeals, Fourth Circuit.
April 13, 1932.

SOPER, Circuit Judge, dissenting.

J. Y. Jordan, Jr., of Asheville, N. C., for appellant.

Thomas A. McCoy, Asst. U. S. Atty., of Asheville, N. C. (Chas. A. Jonas, U. S. Atty., of Lincolnton, N. C., and Frank C. Patton, Asst. U. S. Atty., of Morganton, N. C., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

The appellant, defendant in the court below and hereafter so designated in this opinion, was convicted of selling intoxicating liquor in violation of the National Prohibition Act (27 USCA), and was sentenced to a term of imprisonment. His assignments of error present two points for our consideration: (1) That the trial judge withdrew from the jury the defense of entrapment; and (2) that the judge admitted evidence of a sale of liquor at a date subsequent to that charged in the indictment and constituting a separate and distinct offense.

On the question of entrapment, the evidence was that one Martin, a federal prohibition agent, went to the home of the defendant in the country near Clyde, N. C., with three other young men, and was introduced by them to defendant as a furniture dealer of Charlotte. After some conversation, Martin asked the defendant to get him some liquor, stating that he wished to take it to his partner in Charlotte. Defendant at first denied that he had any liquor; but after further conversation, in the course of which Martin several times asked defendant to get liquor for him, and in which it developed that

defendant and Martin had been soldiers in the same army division in the World War, defendant left and in a few minutes returned with a half gallon of liquor which he sold to Martin for $5. Defendant did not take the stand, but introduced a number of witnesses who testified that he was a man of good character and regularly employed by a wood fiber plant near his home. The government in rebuttal introduced testimony to the effect that defendant bore the reputation of being a rumrunner. The court admitted, over defendant's objection, testimony to the effect that about six weeks after the sale charged in the indictment, as to which the defense of entrapment was asserted, defendant at his home sold a half gallon of liquor to Martin and another prohibition agent.

■ We think that the judge properly instructed the jury that there was no evidence of entrapment. Taken in the light most favorable to the defendant, the record shows nothing more than that the prohibition agent misrepresented his employment, concealed his official position, and made a purchase of liquor from defendant with the intention of prosecuting him for the violation of law involved in the sale. The only inducements to the sale were the requests of the agent that defendant get liquor for him, and the price paid for the liquor. The defendant knew that he was violating the law and must be presumed to have intended to violate it, and there is nothing in the evidence excusing the violation. The fact that the officer requested defendant to make the sale to him did not justify the latter in doing that which the law forbade.

■ The defense of entrapment can be maintained only where, as a result of inducement, the accused is placed in the attitude of having committed a crime which he did not intend to commit, or where, by reason of the consent implied in the inducement, no crime has in fact been committed. Thus the defense has been sustained where an accused, not intending to sell liquor to an Indian in violation of law, made a sale to an Indian disguised so as to mislead the accused as to his identity. U. S. v. Healy (D. C.) 202 F. 349; Voves v. U. S. (C. C. A. 7th) 249 F. 191. In such case the accused lacked the intent to violate the law, and was placed in the position of violating it by the trick of officers of the law who deceived him as to the identity of the purchaser. He was thus beguiled, not into a known violation of the law, but into the belief that an unlawful act was in fact lawful. The defense was not sustained, however, in a case where Indians were sent by officers to purchase the liquor, but were not disguised. United States v. Amo (D. C.) 261 F. 106.

And the defense will be sustained in a prosecution for crimes such as larceny, where the want of consent of the person affected is an essential element of the crime, and where the inducement supplies the consent. State v. Adams, 115 N. C. 775, 20 S. E. 722; U. S. v. Whittier, 5 Dill. 35, Fed. Cas. No. 16,-688; Rex v. McDaniel, Fost. Crown Law 121, 2 East P. C. 665. But as said by Judge Dillon in Whittier's case, supra, "this principle must be limited to the cases where the consent will, as a matter of law, neutralize the otherwise criminal quality of the act." In this class of cases, which is the class in which the defense originated, the distinction is made that where the criminal design originates with the accused, and the owner of the property does not suggest the design or actively urge the accused on to the commission of the crime, the defense may not be asserted, though the owner neglects to protect his property or furnishes facilities for the execution of the design; and this distinction with reference to the origin of the criminal design has been applied by some courts to cases as to which it properly has no application, as where the act committed is a crime irrespective of the consent of the party affected by it. See Butts v. U. S. (C. C. A. 8th) 273 F. 35, 18 A. L. R. 143 and note; O'Brien v. U. S. (C. C. A. 7th) 51 F.(2d) 674 and note.

■ But we think it clear that where the doing of a particular act is a crime, regardless of the consent of any one, and where the accused has intentionally committed such an act, he is guilty of a violation of law, irrespective of the temptation under which he acted or the motive or identity of the person who tempted him. See note of Mr. Francis Wharton to Bates v. U. S. (C. C.) 10 F. 92, 97 et seq., cited with approval by the Supreme Court in Grimm v. U. S., 156 U. S. 604, 610, 15 S. Ct. 470, 39 L. Ed. 550. If notwithstanding the consent implied in the solicitation, the gist of the offense remains, the accused is guilty. Hanish v. U. S. (C. C. A. 8th) 227 F. 584, 586. As said by the late Chief Justice Clark of North Carolina in State v. Smith, 152 N. C. 798, 67 S. E. 508, 509, 30 L. R. A. (N. S.) 946, a prosecution for the unlawful sale of intoxicating liquor, "it is not the motive of the buyer, but the conduct of the seller, which is to be considered."

In the note of Mr. Wharton above mentioned, it is said:

"The only exceptions known to the principle before us exist (1) in cases in which to the offense it is essential that it should be 'against the will' of the party injured; and (2) in cases in which the offense consists in certain physical conditions which cannot exist if a trap be laid.

"(1) When it is a condition to an offense that it should be 'against the will' of the party injured, then there must be an acquittal should it appear that such party invited the defendant to the commission of the offense. This is the case with regard to prosecutions for rape: Reg. v. Fletcher, Bell, 63; 8 Cox, C. C. 131; Com. v. McDonald, 110 Mass. 405; Brown v. People, 36 Mich. 203; State v. Burgdorf, 53 Mo. 65; Walter v. State, 40 Ala. 325; to prosecutions for highway robbery: Rex v. McDaniel, Fost. 121, 128; Long v. State, 12 Ga. 293; to prosecutions for assaults, which are not in themselves offenses against the public peace: Rex v. Wollaston, 12 Cox, C. C. 180.

"(2) When there are physical conditions of an offense inconsistent with a trap, so that these conditions cannot exist when there is a trap, then the defendant must be acquitted. The most striking illustration of this exception is to be found in the case of burglary already noticed. There can be no prosecution for burglary in cases where the door of the house was opened by its owner to give the burglar entrance.

"Whether, when the offense is the special product of the trap, the defendant can be convicted, depends upon the exclusiveness of the causal relationship between the offense and the trap. When the defendant was the passive tool of the entrapping party then there should be an acquittal. On the other hand, the defendant ought not to escape conviction in any case (with the exceptions above given) in which he knowingly committed the offense. The most frequent cases under this head are prosecutions for illicit sales of liquor. In an English trial in 1881 (Rex v. Titley, see London Law Times, July 30, 1881) a conviction of this class, when the sale was induced by the adroitness of a detective, was sustained, though it became subsequently the subject of much discussion in the house of commons. In Scotland (Blaikie v. Linton, 18 Scottish L. R. 583) a similar conviction in 1881 was set aside by the court of justiciary on the ground that the offense was the product of the solicitation. But this can only

hold good in cases in which the offender's action is not imputable to his free agency."

It is to be noted that the Supreme Court has given no countenance to the doctrine of the cases which hold that a violator of the law is to be acquitted because the violation for which he is being prosecuted has been induced by the solicitation of officials of the government. On the contrary, that court has treated the acts of the officers, not as excusing the crime of the accused, but merely as furnishing an opportunity for its commission with a view of ascertaining whether the accused is engaged in an unlawful business. Grimm v. U. S., 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Goode v. U. S., 159 U. S. 663, 16 S. Ct. 136, 40 L. Ed. 297; Rosen v. U. S., 161 U. S. 29, 16 S. Ct. 434, 40 L. Ed. 606; Andrews v. U. S., 162 U. S. 420, 16 S. Ct. 798, 40 L. Ed. 1023; Price v. U. S., 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727. Most of these are "decoy" letter cases; but there is no difference in principle between the case of an officer of the government who writes a letter soliciting an accused to commit a crime and an officer who personally solicits its commission. In both cases the crime is committed because the officer solicits it; and in both the purpose of the solicitation is, not to make criminals, but to detect those who are engaged in criminal practices.

It is suggested that, in the Supreme Court cases cited, the officers had reasonable grounds to suspect that the accused persons were engaged in a violation of law; and some cases have gone so far as to hold that where the defense of entrapment is asserted the burden rests upon the government to prove that, in making purchases, the officers acted upon reasonable grounds of suspicion. These cases lay down a ground of distinction, however, which as a practical matter is impossible of application. It is for the jury to pass upon a defense of entrapment where there is evidence supporting the defense; and to recognize the distinction suggested would be to open up before the jury an inquiry into the suspicions and information of officers of the law which would necessarily confuse the issue before them. But the distinction has no foundation in principle. The accused in such cases is not being tried for conducting a business, but for doing the specific thing which he has done because of the solicitation of the officer. He would not have done that thing but for the officer's conduct; and the only question is whether that conduct is to be treated as purging the

act of the accused of its criminality, or merely as affording an opportunity to the accused of committing the crime. The Supreme Court has taken the latter view of the matter, and reasonably so. Officers of the law are entitled to the presumption that they are acting in good faith, and that in making purchases of liquor and narcotics, in sending decoy letters, etc., they are not engaged in an attempt to manufacture crime for the purpose of prosecuting it, but are attempting to apprehend those who are engaged in violating the law. If in response to their solicitation an accused violates the law, his offense is no less a violation because the opportunity to commit it has been afforded by the act of an officer.

The argument that in such case the criminal design arises, not in the mind of the accused, but in the mind of the officer, is fallacious. The criminal design is the design on the part of the accused to violate the law; and that design, whatever the temptation, arises as a matter of fact in the mind of the accused. What the officer furnishes in such case is, not the criminal design or intent, but the temptation. Even if the inducement to crime be assumed to exist, the allegation of the defendant, as was well said in Board of Com'rs of Excise of Onondaga County v. Backus, 29 How. Prac. (N. Y.) 33, "Would be but the repetition of the plea as ancient as the world, and first interposed in Paradise: 'The serpent beguiled me and I did eat.' That defence was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say christian ethics, it never will."

While courts in some of the federal circuits have seemingly given their approval to the broad doctrine that inducement on the part of government officials is a sufficient defense for one charged with the sale of intoxicating liquors in violation of law, such holding is contrary to the weight of authority on the subject. State v. Smith, supra, 152 N. C. 798, 67 S. E. 508, 30 L. R. A. (N. S.) 946; Bauer v. Com., 135 Va. 463, 115 S. E. 514; State v. Rippey, 127 S. C. 550, 122 S. E. 397; State v. Gibbs, 109 Minn. 247, 123 N. W. 810, 25 L. R. A. (N. S.) 449; Gordon v. State, 7 Ga. App. 691, 67 S. E. 893; Borck v. State (Ala. Sup.) 39 So. 580; Strother v. State, 15 Ala. App. 106, 72 So. 566; Board of Com'rs of Excise of Onondaga County v. Backus, 29 How. Prac. (N. Y.) 33; Tripp v. Flanigan, 10 R. I. 128; French v. State, 149 Miss. 684, 115 So. 705; Nelson v. City of Roanoke (Ala. App.) 135 So. 312; Whittington v. State, 160 Ark. 257, 254 S. W. 532; Hadley v. U. S. (C. C. A. 8th) 18 F.(2d) 507; Corcoran v. U. S. (C. C. A. 8th) 19 F.(2d) 901; De Long v. U. S. (C. C. A. 8th) 4 F.(2d) 244; Zucker v. U. S. (C. C. A. 3d) 288 F. 12; Lucadamo v. U. S. (C. C. A. 2d) 280 F. 653; U. S. v. Reisenweber (C. C. A. 2d) 288 F. 520; Smith v. U. S. (C. C. A. 8th) 284 F. 673; Goldstein v. U. S. (C. C. A. 7th) 256 F. 813. And see notes 30 L. R. A. (N. S.) 946; 17 Ann. Cas. 296; 18 A. L. R. 162; 66 A. L. R. 488; 16 C. J. 88, 89; 8 R. C. L. 129.

Defendant relies upon expressions contained in the opinion of this court in Newman v. U. S., 299 F. 128, 131, to the effect that the government is estopped to prosecute where the criminal design originates, not with the accused, but with the government officers. The Newman Case is authority for the proposition that defendant there was not entitled to certain instructions on entrapment, to the refusal of which he excepted; but, in so far as the language of the opinion goes beyond this, it is not controlling. If it be understood as laying down the rule that one who knowingly and intentionally violates the law, and entertains the criminal design to violate it, is to be excused of his crime because same was induced by the act of an officer of the law, it goes too far, and we cannot follow it.

Many opinions, which we shall not take the time to analyze, deal with the subject of entrapment as though the enforcement of the law were a game in which the law is to be penalized because officials do not play according to the rules. Others confound the law with the personality of the officials who enforce it, and, in cases where the criminal design is said to have originated in the mind of the officer rather than in the mind of the accused, apply a false doctrine of entrapment based in some decisions on estoppel; in others on shadowy grounds of public policy. Neither ground will withstand analysis.

So far as estoppel is concerned, it must be remembered that our government is one of laws and not of men. Officials of the government cannot by word or conduct set aside the law or authorize its violation. If an officer in an excess of zeal engages in unethical conduct, he is subject to censure or removal from office. If he violates the law, he is subject to punishment. But no conduct on his part

justifies the violation of law by any one else. It is well settled that in civil matters the government is not estopped by the acts of its officers "in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." Utah Power & Light Co. v. U. S., 243 U. S. 389, 409, 37 S. Ct. 387, 391, 61 L. Ed. 791; State of Utah v. U. S., 52 S. Ct. 232, 76 L. Ed. ——. A fortiori no estoppel exists in criminal cases. Upon no logical basis can the government, which represents the whole people, be held to be estopped from prosecuting one who has violated a law enacted for the protection of society; nor can justification be found for allowing one who has knowingly violated such a law to go unwhipped of justice because his action has resulted from temptation by a government official. As was said by the Court of Appeals of New York in People v. Mills, 178 N. Y. 274, 70 N. E. 786, 791, 67 L. R. A. 131: "While the courts neither adopt nor approve the action of the officers, which they hold was unauthorized, still they should not hesitate to punish the crime actually committed by the defendant. It is their duty to protect the innocent and punish the guilty. We are asked to protect the defendant, not because he is innocent, but because a zealous public officer exceeded his powers and held out a bait. The courts do not look to see who held out the bait, but to see who took it."

As to public policy, there is no higher public policy than that all men should obey the law. It is true that it is not the duty of officers "to incite to and create crime for the sole purpose of prosecuting and punishing it." But this is a matter which is to be considered when dealing with the officer, not one behind which a person who has intentionally violated the law may shield himself. When Congress, in the exercise of the power conferred upon it by the people, forbids certain conduct as criminal, he who violates the law so enacted is guilty of crime whatever the nature or source of his temptation to violate it; and it is not for the courts to say that crime thus committed is not crime because induced by improper conduct of government officials. Two wrongs do not make a right; and no public policy requires that the courts so declare.

Congress has the power to declare what acts shall constitute crime. It has the power, also, to provide, if it sees fit to do so, that persons shall not be deemed guilty of crime if led into the commission of criminal acts by officers of the government. But, in the absence of such provision, the courts have no power to grant immunity to such persons. For them to do so is to usurp to that extent the pardoning power, which, under our form of government, is vested in the executive. This is in no sense a holding that the government or its officers can do no wrong. It is but the application of the salutary doctrine that the officers are not the government, and that one who violates the law is not to be excused of his crime because of the wrongful conduct of others.

While the case at bar is one involving the violation of the liquor laws, the rule which we are asked to approve would not apply in liquor cases alone, but would furnish a haven of refuge to criminals generally. Most of the criminal laws enacted by the federal government denounce acts which are directed, not against particular individuals, but against the well-being of the social order. For the detection and punishment of such crimes, the government must rely, not upon the voluntary action of aggrieved individuals, but upon the diligence of its officials whose duty it is to detect crime. One of the methods frequently used to detect violations of the postal laws, the anti-narcotic laws, the revenue laws, laws for the protection of the currency, and many others, is to furnish to suspected violators an opportunity to violate them. In almost every case where such method succeeds the design to commit the particular act for which the accused is prosecuted is said to have arisen in the mind of the officer, and the accused claims that he has been entrapped. It is suggested that the plea should be sustained unless the officer can satisfy the jury that he had ground to suspect that the accused was guilty at the time that he furnished the opportunity; but, as stated above, to accept such suggestion would mean that the trial would be diverted from an inquiry into the guilt of the accused into an inquiry into the information, motives, and suspicions of the officer. These, we think, have nothing to do with the case; and it would be most unfortunate for any such practice to be engrafted on the law.

When society is grappling with organized crime, no public policy requires that the courts weaken the hands of the government by recognizing a defense for criminals which has not been created by statute and did not exist at common law, or that they impair the efficiency of trial procedure by allowing persons on trial for crime to inject as an issue to be tried by the jury the reasonableness of the suspicions of an officer when he laid a

trap for their apprehension. It is time to get back to fundamentals. The law is supreme. No man may violate it with impunity. Government officials are not above the law; and nothing that they do excuses the violation of the law by any one else. Courts should protect the innocent, but when a man knowingly and intentionally violates the law he is no longer innocent, whatever the source of his temptation.

If officers of the government have been guilty of unethical conduct in obtaining evidence against an accused, this is a matter which the jury may consider in passing upon their credibility. If the accused has not theretofore been engaged in the commission of crime and has been induced by the officers to violate a law which he would not otherwise have violated, this is a matter which the judge can and should consider in inflicting punishment. But none of these matters exonerates one who has knowingly and intentionally violated the law of his country. No estoppel stays the hand of the government from prosecuting such violation; and no public policy grants amnesty to the violator.

There is no analogy between the rule here under consideration and that which forbids the use on the trial of evidence obtained by a search in violation of the Fourth and Fifth Amendments to the Constitution. These amendments forbid the use of governmental force to search a man's home, his person, his papers, or his effects (Paper v. U. S. (C. C. A. 4th) 53 F.(2d) 184); and evidence obtained in violation of the amendments is not admissible for the reason that to admit it would nullify the constitutional rights of the accused. Henderson v. U. S. (C. C. A. 4th) 12 F.(2d) 528, 51 A. L. R. 420; Agnello v. U. S., 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409. Here there is no contention that any constitutional right of the accused has been violated; and the question is, not as to the admissibility of evidence, but as to the validity of an asserted defense to crime.

Little need be said as to the admissibility of the evidence as to which exception was taken. Assuming without deciding that it was not admissible [but see Sauvain v. U. S. (C. C. A. 8th) 31 F.(2d) 732, and Billingsley v. U. S. (C. C. A. 6th) 274 F. 86], its admission could not have prejudiced defendant's cause for the reason that the evidence both of the government and of the defense showed without question that defendant made the sale of which he was convicted, and the only question which defendant raised

with regard thereto was as to entrapment. In such case, evidence of a subsequent sale could not by any possibility have affected the result.

For the reasons stated, the judgment of the court below will be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

The opinion of the court announces a rule of law contrary to that stated in its former decision in Newman v. United States (C. C. A.) 299 F. 128, 131, in which it was held that, under certain circumstances, entrapment of a defendant by government officials constitutes a valid defense. In that case, Judge Woods said: "It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor. 'The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it.' Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143."

Judge Sanborn's comprehensive statement to the same effect in Butts v. United States, supra, has been widely quoted with approval; and the doctrine has been accepted in every federal circuit.[1] The Supreme Court of the United States has had no occasion to say in any case before it that the accused had been improperly entrapped. The facts in each instance have shown merely a purpose on the part of the government's agents to ascer-

[1] United States v. Certain Quantities of Intoxicating Liquors (D. C. N. H.) 290 F. 824; Capuano v. United States (C. C. A. 1st) 9 F.(2d) 41; Lucadamo v. United States (C. C. A. 2d) 280 F. 653; United States v. Reisenweber (C. C. A. 2d) 288 F. 520; United States v. Lynch (D. C. N. Y.) 256 F. 983; Zucker v. United States (C. C. A. 3d) 288 F. 12; Newman v. United States (C. C. A. 4th) 299 F. 128; Vamas v. United States (C. C. A. 5th) 13 F.(2d) 347; Billingsley v. United States (C. C. A. 6th) 274 F. 86; Cermak v. United States (C. C. A. 6th) 4 F.(2d) 99; O'Brien v. United States (C. C. A. 7th) 51 F.(2d) 674; Butts v. United States (C. C. A. 8th) 273 F. 35, 18 A. L. R. 143-note; Robinson v. United States (C. C. A. 8th) 32 F.(2d) 505, 66 A. L. R. 468-note; Peterson v. United States (C. C. A. 9th) 255 F. 433. See Cornelius on Search and Seizure, § 75 et seq.

tain whether the defendant was engaged in an unlawful business, and not a design to induce or solicit the commission of a crime.[2] It has been sufficient for the court to point out that the investigation's of the agents had been conducted in a proper manner, and no decision has been based on the theory now advanced that the defense cannot exist in any case, if all of the elements of a crime are present. In its most recent decision on the question, Casey v. United States, 276 U. S. 419, 48 S. Ct. 373, 72 L. Ed. 632, the court held that a defense of entrapment should be overruled, and a conviction for violation of the narcotic laws should be sustained, because the government officers, who got the evidence with the aid of a decoy, had probable cause to suspect that the defendant was a habitual violator, and did nothing to induce him to commit the crime beyond a simple request to furnish the drugs contrary to law. The Supreme Court has gone no further than to hold, in harmony with the widely accepted rule, that entrapment is no defense when the officers of the government merely present an opportunity to a suspected person to violate the law.

It is of course true that no conduct on the part of the officers of the government can authorize or excuse a violation of the law. Nevertheless, it has been thought by the federal judiciary with striking unanimity that the government should not be allowed to prosecute a man who has been transformed from a law-abiding citizen into a criminal by the activities of its agents. It is agreed that there is no place in our system of law for the idea that the government can do no wrong. Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010. Such a prosecution is rarely undertaken, as those who have had experience in the federal courts well know; most frequently the defense of improper entrapment is merely a groundless excuse offered by those who would escape the penalty of their offenses. But when the defense is sustained by the proof, fair dealing demands that the prosecution shall fail.

We do not satisfy this ideal by an appeal to the doctrine that, in civil affairs, the government is not estopped by the unlawful acts or neglects of its agents. That rule is designed to relieve the government from responsibility for the unauthorized acts and delinquencies of persons in its employ. Judge Story, in a case of laches, said that the rule was based, not upon the notion of extraordinary prerogative, but upon a great public policy. United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199; United States v. Hoar, 2 Mason, 311, Fed. Cas. No. 15,373. See, also, Whiteside v. United States, 93 U. S. 247, 257, 23 L. Ed. 882. The manifold operations of the government can be conducted only through numerous agents. One who deals with them is obliged to take notice of the limitations upon their powers, and may not assert any claim or defense based upon either laches or neglect; for otherwise, the most serious losses to the public could not be avoided with the utmost vigilance. So understood, the doctrine seems to furnish little reason to permit the government to adopt and ratify conduct on the part of its agents, which no one undertakes to justify. It is likely enough that the rule of entrapment now generally accepted in other federal circuits is an extension of the law laid down in those cases like larceny, in which the consent of the injured party is inconsistent with the existence of the crime; but the development, illogical though it may have been, has taken place, and we should gain nothing if we should now retrace our steps. "The life of the law has not been logic; it has been experience." Holmes, The Common Law, 1.

The facts in the pending case justify an application of the prevailing rule. Sorrells was regularly employed by the Champion Fibre Company at Canton, N. C., and had not missed a pay day since March, 1924. On Sunday, July 13, 1930, a prohibition agent visited Sorrells' home in the country near the village of Clyde, N. C., in order to try to buy intoxicating liquors from him, and, if successful, to prosecute him for violation of the National Prohibition Law. The agent was accompanied by three young men, residents of the community. One of them introduced him to Sorrells as a furniture dealer from Charlotte, on a vacation, who was desirous of procuring some good whisky. The agent asked Sorrells to get it; but he said that he did not have any whisky and that he did not fool with it. The agent and his associates nevertheless remained at the house for an hour and a half, and, during this interval, it transpired that Sorrells and the agent and one of the others had served in the same division of the American Army during the Great War. Their experiences in the war were discussed, and, during the conversation, the agent asked Sorrells three or

[2] Grimm v. United States, 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 667, 16 S. Ct. 136, 40 L. Ed. 297; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 40 L. Ed. 606; Andrews v. United States, 162 U. S. 420, 423, 16 S. Ct. 798, 40 L. Ed. 1023; Price v. United States, 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727.

four times to get some whisky, but each time was met with the same response as at first. The request was again renewed, and finally Sorrells said that he would go and see if he could get some. He left his home and was gone from twenty to thirty minutes, returning with a half gallon of whisky which he delivered to the agent in exchange for the sum of five dollars. There was evidence tending to show that Sorrells bore a good reputation in the community. To offset this testimony, the government called a number of witnesses in rebuttal who said that, for a considerable period prior to the sale, Sorrells had the general reputation of being a rum-runner, and that this reputation was known to the agent. The government also proved that Sorrells made a subsequent sale of intoxicating liquor on August 28, 1930, when solicited by the prohibition agent, and also that a search of the defendant's premises two weeks later revealed eleven one-half gallon jars of whisky hidden in a thicket seventy-five yards from the defendant's house, and a ten-gallon keg containing three and a half gallons of wine secreted near his residence.

From this evidence, the jury might have found that the defendant had been an industrious law-abiding man, who had never violated the National Prohibition Law (27 USCA) prior to the sale charged in the indictment; and that he was overpersuaded on that occasion by the persistent requests of his former comrades in arms to leave his home and procure the liquor they desired. On the other hand, the jury might have concluded that the agent had reason to suspect that the defendant was a lawbreaker, and that the event proved this to be true when once the defendant was convinced that he might safely do business with his visitors. The District Judge refused to submit the issue thus raised, and charged the jury that the evidence showed that the defendant was not induced or entrapped to sell the liquor, and that, if the jury believed that the sale was made, they should find a verdict of guilty. The defendant was convicted and sentenced to serve a term of eighteen months in the penitentiary. It was not a case for peremptory instructions by the District Judge either way, if improper entrapment is a valid defense, for conflicting inferences might reasonably have been drawn from the evidence, and a question of fact for the determination of the jury was presented. Chicago & N. W. Ry. Co. v. United States (C. C. A.) 234 F. 272; Western Union Tel. Co. v. Hall (C. C. A.) 287 F. 297.