## STATE v. KING (No. 2).

Circuit Court, Dade County, Criminal Appeal, Division One.
December 27, 1956.

Dan Chappell, Leonard R. McMillen, Hilton R. Carr, Jr., and Herbert A. Warren, all of Miami, for appellant.

A. C. Dressler, County Solicitor, Glenn C. Mincer and Raymond J. Dwyer, Assistant County Solicitors, for appellee.

Before CHARLES A. CARROLL, GRADY L. CRAWFORD, PAT CANNON, ROBERT L. FLOYD and ROBERT H. ANDERSON, Circuit Judges.

PER CURIAM.

Section 833.01, Florida Statutes, provides, "If two or more persons shall agree, conspire, combine or confederate: (1) To commit any offense;" they shall be punished by imprisonment, etc. The information charges that the defendants, King, Carberry and Monroe, conspired to commit an offense, i.e., to violate section 849.01 relating to keeping a place for the purpose of gambling, and to violate section 849.25 relating to bookmaking.

The appellant apparently contends that the statute requires that one of the *convicted* conspirators *shall commit an offense.* If so, he is mistaken. The offense denounced by section 833.01 *is complete upon proof of the agreement to commit an offense.* It is not necessary, as in the case of violation of the federal statute denouncing conspiracies, to either allege or prove an overt act. Hence, the federal cases are not in point.

Section 849.01 provides that whoever keeps a gaming table or room, or gaming implements or apparatus, or house or other place for the purpose of gaming or either exclusively or with others permits any person to play for money shall be punished by imprisonment, etc.

Section 849.25 provides that whoever engages in bookmaking shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment, etc. Bookmaking by this section is defined to be "the taking or receiving of any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of man, beast, fowl or motor vehicle."

The evidence, if believed, establishes beyond a doubt that the appellant agreed with Carberry, Monroe and Moscowitz to commit one or both of these offenses. As we pointed out in our original opinion, it was not necessary that all of the alleged conspirators be convicted. It was sufficient if the jury found two to be guilty.

The appellant relies heavily on State v. Dougherty (N. J. Ct. of Errors and Appeals 1915), 88 N. J. L. 209, 96 A. 56. In that case the charge was that there was a conspiracy to pervert the due administration of the laws relating to the municipal government of Atlantic City by corruptly passing an ordinance for bribes to be paid to a person interested in securing its passage. The court held

that the charge was not sustained as the object of the detective who instigated it was to expose corruption and *prevent* injury to the public and hence there was a failure to prove a conspiracy to *pervert* the due administration of the laws. We think that the offense involved in the instant case differs from that in the Dougherty case both in form and in substance. Incidentally, we might add that under the New Jersey law, as under the federal law, to sustain a conviction of conspiracy it is necessary to allege and prove an overt act. State v. Dougherty (N. J. Sup. Ct. 1915), 86 N. J. L. 525, 93 A. 98.

In view of the reliance placed by appellant on the Dougherty case we have "Shepardized" it. It has been cited eleven times by the New Jersey courts and the federal courts. Strangely enough, in most cases it was cited on the question of entrapment, *which the Court of Errors and Appeals of New Jersey expressly said it was unnecessary to consider.* In this connection we might observe that the defense of entrapment has been practically abolished in Florida (see 838.11, Florida Statutes).

In State v. Sabato (N. J. Sup. Ct. 1918), 103 A. 807, citing the Dougherty case, the plaintiff in error was indicted for conspiring to murder one Taffey. The question on appeal was the admissibility of evidence of certain detectives which tended to prove existence of the conspiracy. Objection was that this evidence showed the witnesses were not engaged in detecting a crime, but in trying to get plaintiff in error to commit a crime. *The court held that the inference to be drawn from the evidence was a matter of fact for the jury.*

And in Zucker v. U. S. (C. C. A. 3) (1923), 288 F. 12, citing the Dougherty case, the court said—

"Where government officials, suspecting persons of committing crime, make a proposition that they commit the crime for profit, and they, thinking that the officers are their ordinary partners, willingly enter into the agreement to commit the crime and do so, they cannot escape the consequences of their conduct on the ground that they were induced to commit the crime and were entrapped. Lucadamo v. United States (C. C. A.) 280 Fed. 653, 658. Even if the object of the conspiracy in the minds of the government officials was not to be consummated, this does not vitiate the judgment, and the defendants cannot plead in defense that they would not have violated the law if inquiry had not been made of them and negotiations had not been entered into with them by government officials. Grimm v. United States, 156 U. S. 604, 610, 15 Sup. Ct. 470, 39 L. Ed. 550."

The other cases where State v. Dougherty is cited either deal with entrapment or are of no value in interpreting it.

In our view the reasoning of the Supreme Court of New Jersey in State v. Dougherty, supra, is much more convincing than that of the Court of Errors and Appeals which reversed it. While we are on the subject, we might add that the decision of the Supreme Court was apparently unanimous while that of the Court of Errors and Appeals had five justices, including the chancellor (who is the highest judicial officer of the state), dissenting.

The language of Mr. Justice Brewer of the Supreme Court of the United States in Grimm v. United States, 156 U.S. 604, 15 S. Ct. 470, 39 L. Ed. 550, is in point—

"It does not appear that it was the purpose of the post office inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business. The mere facts that the letters were written under an assumed name, and that he was a government official—a detective, he may be called—do not themselves constitute a defence to the crime actually committed. The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defence that he would not have violated the law if inquiry had not been made of him by such government official."

We do not think that the petition for rehearing is well taken. It is accordingly denied.